**FREDON CORPORATION, Appellee,**

**v.**

**ZELENAK; Admr., Ohio Bureau of Employment Services, Appellant.**

[Cite as *Fredon Corp. v. Zelenak* (1997), 124 Ohio App.3d 103.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 96–L–201.

Decided Nov. 3, 1997.

*James M. Lyons,* for appellee.

*Betty D. Montgomery,* Attorney General, and *Betsey N. Friedman,* Assistant Attorney General, for appellant.

CHRISTLEY, Judge.

This case is an accelerated calendar appeal. Appellant, Administrator, Ohio Bureau of Employment Services ("OBES"), appeals the judgment of the Lake County Court of Common Pleas that reversed the decision of the Unemployment Compensation Board of Review ("Board of Review"). For the reasons that follow, we reverse the judgment of the court of common pleas and reinstate the decision of the Board of Review, which granted benefits to claimant John P. Zelenak ("Zelenak").[1]

Zelenak was employed as a machinist by appellee, Fredon Corporation ("Fredon") of Mentor, Ohio, during two separate periods of time. His second and last period of employment began in April 1994 and ended on September 8, 1995. On this day, September 8, 1995, Zelenak was discharged following a meeting with his shift foreman, Richard Ditto ("Ditto"), and his lead man, Edward Kunas ("Kunas").

On September 12, 1995, Zelenak applied for unemployment compensation benefits pursuant to R.C. 4141.28. Zelenak stated on his application form that he was "told to get out of the building" because he voiced his concerns regarding safety at Fredon after two workers were injured following a change in work policy. Ditto denied those statements and said that Zelenak was called into the office to discuss how to improve Zelenak's productivity. He claimed that Zelenak then said that he "didn't give a shit if he made money or not or how much time he took on the job." As a result, Ditto said that Zelenak was terminated "because [they] felt there would not be improvements made and a definite lack of interest to do better or continue his employment with Fredon."

OBES initially agreed with Fredon and denied Zelenak's claim for benefits on the basis that he was discharged for good cause because of insubordination. Zelenak subsequently filed a request for reconsideration in which he alleged, for the first time, that the real reason for his discharge was his open promotion and leadership of a move to establish a union at Fredon. He also reiterated his complaints about safety issues at Fredon. He further denied that he was justifiably discharged due to his work productivity, attitude, or any insubordination on his part.

In response to Zelenak's request for reconsideration, Fredon made a request to the Board of Review for a fact-finding interview, again alleging that due to Zelenak's poor attitude, the company did not feel he would improve his performance. On December 7, 1995, OBES affirmed its original decision denying benefits to Zelenak on the grounds that he was discharged for insubordination.

---

1. Zelenak was originally a defendant in the action; however, he is not a party to this appeal.

Zelenak then took an appeal of this Administrator's reconsideration decision that affirmed the denial of benefits, and, like Fredon, requested an "in person referee hearing to be scheduled." The Board of Review scheduled a hearing for January 8, 1996, to determine whether Zelenak was discharged with or without just cause. Both sides appeared without counsel.

At the hearing, conflicting testimony was given by Zelenak and Kunas as to what occurred in the meeting on September 8, 1995. In addition to the testimony, the hearing officer received the following exhibits as evidence: (1) Fredon's employee handbook, which provided for a series of suspensions without pay before an employee would be terminated, but which reserved the right to terminate at will; (2) a written acknowledgment that Zelenak received a copy of the handbook; (3) a performance appraisal written by Zelenak's second shift supervisor, dated January 4, 1995, which rated Zelenak's overall performance as "unsatisfactory" and which stated that "[h]is quantity [and] quality has been far below that of his [first] shift counterparts"; (4) a written copy of a verbal warning to Zelenak from Ditto on January 5, 1995, which stated that Zelenak was put on first shift because his "work performance on [second shift] ha[d] been unsatisfactory" and that Zelenak was allowed to return to Fredon for a second time "hoping [he] would improve with time and supervision"; (5) a progress report written by Ditto to Zelenak, dated February 13, 1995, which stated that Zelenak's performance "still has not improved to a satisfactory level"; (6) costs sheets showing the hours or quantity of Zelenak's work; and (7) a file entry written by Ditto on September 8, 1995, which stated that he "let John Zelenak go today" because Zelenak said that "he didn't care if he takes too much time on jobs."

On January 10, 1996, the hearing officer reversed the Administrator's decision on reconsideration and ruled that Zelenak was not insubordinate and that he was discharged without just cause in connection with work. The decision allowed Zelenak to receive benefits beginning with the week of his initial application, and it increased the potential charges to Fredon's account with OBES in accordance with the decision.

The hearing officer made the following pertinent findings of fact: (1) that Zelenak, Kunas, and Ditto met on September 8, 1995; (2) that there was some discussion about safety and injuries on the job; (3) that Ditto and Kunas told Zelenak that other employees were working faster then he was; (4) that Zelenak wanted these other employees to be called in to question them in this regard, but that Ditto and Kunas refused; (5) that Zelenak did not respond by saying that he did not care that his productivity was low or whether the company made money; (6) that Zelenak had approached management previously about providing cobalt drills that would improve work performance, but that Ditto told Zelenak that this

was not a union shop and he could "get his toolbox and get out"; and (7) that Zelenak was not insubordinate in the meeting that led to his discharge.

The hearing officer reasoned that Fredon deviated from the progressive termination procedures provided in the employee handbook without showing sufficient justification for this deviation, that Zelenak was "the more knowledgeable witness" and therefore resolved the factual dispute as to whether Zelenak was insubordinate in his favor, and that there was insufficient evidence of a continuing problem with Zelenak's work performance after his unsatisfactory progress report in mid-February 1995.

Fredon subsequently applied to institute a further appeal of the Board of Review's decision, which was disallowed on February 20, 1996. Fredon then took an appeal of that decision to the Lake County Court of Common Pleas. In its appeal, Fredon argued that the decision of the Board of Review was unlawful, unreasonable, and/or against the manifest weight of the evidence. It claimed the evidence clearly established that Zelenak was *insubordinate*, and that Fredon did not receive a fair hearing because the hearing officer did not develop any facts or ask questions about the job performance cost sheets at issue in the September 8, 1995 meeting. The assignments of error made to the court of common pleas did not *directly* allege poor work performance.[2]

The court of common pleas ruled in favor of Fredon and reversed the decision of the Board of Review. The court based its decision on its finding that Zelenak "was insubordinate and therefore he was terminated for just cause." The court further stated:

"The hearing officer failed to analyze the evidence that was presented. His analysis was shallow and perfunctory. The hearing officer ignored the evidence which was before him, thereby reaching a wholly unlawful and unreasonable conclusion. He further failed to accord both sides an impartial hearing."

In its decision, the court of common pleas determined that Zelenak's claim that he was fired for expressing his concern over safety issues as well as his pro-union

---

2. Fredon asserted the following two assignments of error before the common pleas court:

"[1.] The decision of the Administrator was unlawful, unreasonable and/or against the manifest weight of the evidence because the evidence clearly established that the Appellee, John Zelenak, was insubordinate toward the employer during a meeting to discuss his job performance.

"[2.] The decision of the hearing officer was unlawful and unreasonable because the hearing officer is under an obligation to bring forth all pertinent facts from the witnesses in attendance so that all parties receive an impartial hearing. The hearing officer violated this duty when he did not develop any facts or ask any questions about the job performance costs sheets that were submitted as Employer Exhibit 5. Further, the hearing officer did not consider Exhibit 5 when he was making his decision and, therefore, the Appellant did not receive a fair hearing as is required by law."

activity was not credible. The court of common pleas further stated that "[t]he inference is created at the minimum ·that * * * [Zelenak] was a marginal worker." Finally, the court of common pleas court stated that the hearing officer "failed to consider the significance of * * * [Fredon's] cost sheets."

Appellant, OBES, appeals this decision, seeking reversal of the court of common pleas' decision and reinstatement of the decision of the Board of Review. Appellant asserts three assignments of error:

"[1.] The common pleas court erred in reversing the Unemployment Compensation Board of Review's decision that claimant was discharged without just cause as there is competent, credible evidence in the record to support the finding that claimant was not insubordinate.

"[2.] The common pleas court erred in reversing the Unemployment Compensation Board of Review's decision that claimant was discharged without just cause as there is competent, credible evidence in the record to support the finding that the employer failed to follow its progressive disciplinary procedure.

"[3.] The common pleas court erred in finding that the employer did not receive a fair hearing before the Board of Review."

 In its first assignment of error, appellant argues that the court of common pleas improperly invaded the province of the trier of fact by weighing evidence and by substituting its judgment for that of the hearing officer for the Board of Review. Appellant further argues that the court of common pleas' decision is unreasonable and contrary to statutory and established case law. We agree.

The General Assembly has set a statutory standard for review of the decisions of the Board of Review. R.C. 4141.28(O)(1) provides in part:

"If the court finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse and vacate such decision or it may modify such decision and enter final judgment in accordance with such modification; otherwise such court shall affirm such decision."

Although the court of common pleas used the appropriate statutory language to reverse the decision of the Board of Review by stating that the decision was unlawful, unreasonable, and against the manifest weight of the evidence, it did not, in fact, apply the standard as intended by the legislature or as provided for in established case law.

Under R.C. 4141.28, the appellate process for unemployment compensation cases does not involve the hybrid review and *de novo* proceeding found in other R.C. Chapter 119 appeals. It is our observation that an unemployment compensation appeal probably provides the least opportunity for a reviewing court to

weigh and assess evidence and credibility of witnesses of any R.C. Chapter 119 administrative proceeding.

■ The law is well settled that reviewing courts may reverse unemployment compensation "just cause" determinations only if they are unlawful, unreasonable, or against the manifest weight of the evidence. *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.* (1995), 73 Ohio St.3d 694, 696, 653 N.E.2d 1207, 1210, quoting *Irvine v. Unemp. Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 17–18, 19 OBR 12, 14–16, 482 N.E.2d 587, 589–591; *Brown–Brockmeyer Co. v. Roach* (1947), 148 Ohio St. 511, 515, 36 O.O. 167, 169, 76 N.E.2d 79, 82.

■ Concerning the determination of purely factual issues, such as the credibility of witnesses and the weight to be given to conflicting evidence, the reviewing court should defer to the Board of Review's findings. *Brown–Brockmeyer* at 518, 36 O.O. at 170, 76 N.E.2d at 83–84; *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 161, 11 OBR 242, 243–244, 463 N.E.2d 1280, 1282.

■ The duty of a reviewing court is to determine whether the Board of Review's decision is supported by the evidence in the record. See *Tzangas,* 73 Ohio St.3d at 696, 653 N.E.2d at 1210; see, also, *Ohio Historical Soc. v. State Emp. Relations Bd.* (1993), 66 Ohio St.3d 466, 469–471, 613 N.E.2d 591, 594–596; *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 17 O.O.3d 65, 407 N.E.2d 1265. This duty is "shared by all reviewing courts, from the first level of review in the common pleas court, through the final appeal in" the Supreme Court of Ohio. *Tzangas* at 696, 653 N.E.2d at 1210.

■ Moreover, " '[t]he fact that reasonable minds might reach different conclusions is not a basis for the reversal of the board's decision.' " *Id.* at 697, 653 N.E.2d at 1210, quoting *Irvine,* 19 Ohio St.3d at 18, 19 OBR at 15, 482 N.E.2d at 590.

■ Ohio case law holds that an employee is considered to have been discharged for just cause when the employee, by his actions, demonstrated an unreasonable disregard for his employer's best interests. *Kiikka v. Ohio Bur. of Emp. Serv.* (1985), 21 Ohio App.3d 168, 169, 21 OBR 178, 179–180, 486 N.E.2d 1233, 1234. The conduct need not rise to the level of misconduct, but the employer must demonstrate some showing of fault on the part of the employee. *Sellers v. Ohio Bur. of Emp. Serv.* (1981), 1 Ohio App.3d 161, 164, 1 OBR 473, 475–476, 440 N.E.2d 550, 552–553.

In the instant case, the Board of Review found that Fredon failed to make such a showing of fault, and as a result, it found that Zelenak was not discharged for just cause. Specifically, the hearing officer found that Zelenak was not insubordi-

nate during the September 8, 1995 meeting. As a result, Zelenak was determined to be entitled to unemployment compensation benefits.

The court of common pleas, however, held differently. In reaching this result, the court of common pleas analyzed Zelenak's claim that he was discharged due to his concerns over safety and pro-union activity. That analysis independently weighed the evidence, it determined new inferences, and it assigned credibility. Thus, the common pleas court failed to defer to the findings of fact of the Board of Review.

Specifically, the court of common pleas disregarded the Board of Review's findings of fact that Zelenak was the more credible witness and that Zelenak was not, in fact, insubordinate.

The court of common pleas' emphasis on the issue of work productivity is misplaced. The Board of Review in its earlier rulings *never* acknowledged the validity of the issue, ruling only that Zelenak was discharged because of insubordination.

Interestingly, Fredon's witnesses always maintained that the purpose of the meeting was to discuss Zelenak's poor productivity *vis-a-vis* the cost sheets. It never claimed that the purpose of the meeting was to fire him *for that reason.*

In the report, the hearing officer's conclusion that "there is insufficient evidence to establish that there continued to be a problem with claimant's work performance after January and February 1995" related to a credibility issue. In other words, the hearing officer did not believe that Zelenak was fired for poor productivity because there was no evidence of poor productivity after February 1995. Thus, the productivity issue was a pretext.

As a result, the dispute over the contents of the cost sheets is irrelevant except to corroborate Fredon's premise that the September 8, 1995 meeting was called to *discuss* appellant's productivity. However, that premise did not need corroborating, as appellant had admitted that his productivity was a primary topic of discussion at that meeting.

Thus, the decision of the Board of Review should not have been reversed by the court of common pleas either on the basis of work productivity or insubordination. Appellant's first assignment of error is well taken.

In its second assignment of error, appellant argues that the court of common pleas failed to address the fact that Fredon did not follow its progressive disciplinary termination procedures as stated in the employee handbook. Appellant now asks this court to follow the decision of the Eighth District Court of Appeals that held that the employer's failure to follow a *mandatory* progressive disciplinary procedure resulted in a discharge without cause. See *Pickett v. Unemp. Comp. Bd. of Review* (1989), 55 Ohio App.3d 68, 562 N.E.2d 521. We note that in the instant matter, the disciplinary process was not mandatory as it

was in *Pickett*. Regardless, we decline to reach the merits of this argument in light of the validity of appellant's first assignment of error and declare it to be moot. See App.R. 12.

█ In its third and final assignment of error, appellant argues that the court of common pleas erred by finding that Fredon did not receive a fair hearing because the hearing officer failed to consider the significance of the costs sheets discussed with Zelenak on September 8, 1995. We disagree for the reasons set out in the first assignment on this issue.

Further, the hearing provided for by R.C. 4141.28 is highly informal. *Tilford–Harris v. Bd. of Review* (Oct. 8, 1987), Cuyahoga App. No. 52742, unreported, 1987 WL 18254. It is one in which all of the parties have the opportunity to produce evidence and examine witnesses so as to bring before the hearing officer all facts pertinent to the issue. *Id.*

█ Under Ohio case law, even when one or both parties appear *pro se*, a hearing officer has no duty to present or establish either party's case. See *Fasolo v. Ohio Bur. of Emp. Serv.* (Jan. 21, 1988), Cuyahoga App. No. 52839, unreported, 1988 WL 5174. Having chosen to pursue its case without counsel, appellee should not expect, and the law does not provide, that the hearing officer must act as either party's advocate. *Id.* Thus, any failure to present properly or to explain the significance of various exhibits must be placed at the feet of the responsible litigant.

Having reviewed the transcript in this matter, we find that it is clear that the hearing officer properly entered all exhibits into the record, including the costs sheets. There is no evidence before this court to demonstrate that the hearing officer did not consider them or that he did not discharge his duties in a fair, impartial, and helpful way.

Again, the issues of the cost sheets and productivity related only to the evaluation of Fredon's credibility as to whether the decision to terminate was based on Fredon's version of the events and Zelenak's alleged insubordination.

Appellant's third assignment of error is not well taken.

In conclusion, appellant's first assignment of error is well taken; the second assignment is rendered moot; and the third assignment is not well taken.

The judgment of the court of common pleas is, therefore, reversed, and the decision of the Board of Review is hereby reinstated, and judgment is entered for appellant, Ohio Bureau of Employment Services.

*Judgment reversed.*

FORD, P.J., and NADER, J., concur.