OPINION
{¶ 1} This accelerated calendar case submitted on the briefs of the parties concerns an administrative appeal from the Lake County Court of Common Pleas. Appellant, the Ohio Department of Job and Family Services ("the ODJFS"), appeals from the judgment of the trial court reversing the decision of the Ohio Unemployment Compensation Review Commission ("the review commission") as being unlawful, unreasonable and against the manifest weight of the evidence. According to the review commission, appellee, Jerry Talley, was disqualified from receiving unemployment compensation benefits because he was discharged for just cause in connection to his employment. For the reasons that follow, we affirm the reversal by the trial court.
 {¶ 2} By way of background, appellee was employed with Coe Manufacturing Company ("Coe Manufacturing") in the foundry department as a sand mixer and a laborer since June 1984. However, on June 10, 2000, appellee was discharged for violating a provision of the labor-management contract relating to excessive garnishments. Specifically, Coe Manufacturing had a contract with the United Steelworkers of America, Local 12833, which provided that if an employee had more than two garnishments filed against him/her in a one-year period, then that employee was subject to discharge:
 {¶ 3} "[Section] 17.09: If an employee has more than two (2) garnishments (the legal attachment of an employee's wages from the Company at the instigation of a third party) within any twelve (12) months period during the life of this Contract, he shall be subject to immediate discharge without recourse to the provisions of Article 4 — Grievance procedure."
 {¶ 4} In implementing this garnishment rule, it was the practice of Coe Manufacturing to consider garnishments from the same creditor as constituting only one garnishment. However, such an application of the garnishment rule was not reflected in the labor-management contract.
 {¶ 5} According to Louis Falk ("Mr. Falk"), the director of human resources for Coe Manufacturing, the purpose of the garnishment rule was to avoid hardship and inconvenience on the accounting department:
 {¶ 6} "Q. [on cross-examination by appellee's counsel] Okay. Could you tell us what the purpose of the rule for garnishment is?
 {¶ 7} "A. That contract provision has been in effect for more than the 27, 28 years I've been with Coe Manufacturing. So its initial placement in the contract, I can't comment on. I can't comment on some of the things because repeated garnishments and wage attachments and so on are a hardship, and inconvenience and a time consuming thing to the accounting people in payroll department. And I'm sure part of the reason is for that is to put a restriction on that and have no more than a certain limited number to avoid that sort of inconvenience and so on."
 {¶ 8} Mr. Falk, however, was unable to provide the cost Coe Manufacturing incurred for processing the garnishment:
 {¶ 9} "Q. Okay. What is the cost of the garnishment?
 {¶ 10} "A. I couldn't tell you the cost. What do you mean, for processing?
 {¶ 11} "Q. Yes.
 {¶ 12} "A. I have no idea."
 {¶ 13} During his period of employment, appellee suffered a back injury which kept him out of work for a significant amount of time and resulted in him accumulating many bills. Appellee subsequently incurred three garnishments from three different creditors during a twelve month period, to wit: January 31, 2000, May 8, 2000 and May 16, 2000.
 {¶ 14} After the issuance of the second garnishment on May 8, 2000, appellant retained an attorney on May 10, 2000, for the purpose of filing for bankruptcy to protect himself from further garnishments. The attorney, however, failed to file the bankruptcy petition prior to the issuance of the third garnishment on May 16, 2000. As a result, appellee was terminated from his employment on June 10, 2000 for obtaining three garnishments. It was on the date of his termination that appellee's attorney filed the petition for bankruptcy.
 {¶ 15} In October 2000, appellee applied for unemployment compensation benefits. On November 6, 2000, the ODJFS disallowed appellee's claim after determining that he was discharged for just cause in connection with his employment:
 {¶ 16} "Claimant [appellee] was discharged from employment with COE MFG CO because his *** wages were subject to garnishment.
 {¶ 17} "A review of the facts establishes that the discharge was based on claimant's act, omission, or course of conduct. There was sufficient fault on the claimant's part that an ordinary person would find the discharge justifiable."
 {¶ 18} After appealing the initial determination, the ODJFS issued a redetermination on December 7, 2000, affirming the denial of unemployment compensation benefits. On December 11, 2000, appellee filed an appeal from the redetermination with the review commission. Upon doing so, the review commission conducted a hearing on January 9, 2001. After taking the matter under advisement, the hearing officer concluded that the facts did not support a change in the initial determination that appellee was discharged with just cause in connection to his employment. Further review of the hearing officer's determination was disallowed by the review commission.
 {¶ 19} As a result, on March 1, 2001, appellee filed a notice of appeal to the Lake County Court of Common Pleas. Upon review, the trial court issued a lengthy judgment entry on December 21, 2001, finding that the decision of the review commission to disallow appellee unemployment compensation benefits on the basis that he was discharged for just cause in connection with his employment was unlawful, unreasonable, and against the manifest weight of the evidence.
 {¶ 20} From this judgment, appellant filed a notice of appeal advancing a single assignment of error for our consideration:
 {¶ 21} "The common pleas court erred in reversing the Unemployment Compensation Review Commission's decision that claimant was discharged for just cause as there is competent, credible evidence in the record to support the finding that claimant was discharged for just cause for violation of company policy."
 {¶ 22} Before we may consider appellant's argument, we must lay out the appropriate standard of review.
 {¶ 23} In Tzangas, Plakas Mannos v. Ohio Bur. of Emp.Services (1995), 73 Ohio St.3d 694, 696-697, the Supreme Court of Ohio clarified that there is no distinction between the scope of review of common pleas and appellate courts regarding just cause determinations in unemployment compensation cases. As such, "[a]n appellate court may reverse the Unemployment Compensation Board of Review's `just cause' determination only if it is unlawful, unreasonable or against the manifest weight of the evidence." Id. at paragraph one of the syllabus. See, also, Janovsky v. Ohio Bur. of Emp. Services (1996),108 Ohio App.3d 690, 692-693.
 {¶ 24} Furthermore, we are mindful that the "[d]etermination of purely factual questions is primarily within the province of the referee and the board." Irvine v. State Unemployment Comp. Bd. of Review (1985),19 Ohio St.3d 15, 17. As such, a court serving in an appellate capacity has a limited power of review and is "not permitted to make factual findings or to determine the credibility of witnesses." Id. at 18.
 {¶ 25} Rather, "[t]he duty or authority of the courts is to determine whether the decision of the board is supported by the evidence in the record." Id. at 18. "This duty is shared by all reviewing courts, from the first level of review in the common pleas court through the final appeal [in the Supreme Court of Ohio]." Tzangas at 696. However, "[t]he fact that reasonable minds might reach a different conclusion is not a basis for the reversal of the board's decision. *** `Where the board might reasonably decide either way, the courts have no authority to upset the board's decision.'" (Citations omitted.) Irvine at 18.
 {¶ 26} It is axiomatic that Ohio's Unemployment Compensation Act prohibits the payment of benefits if an employee "has been discharged for just cause in connection with his [or her] work." R.C. 4141.29(D)(2)(a). "`[J]ust cause' in a statutory sense is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." Irvine at 17, citing Peyton v. Sun T.V. (1975),44 Ohio App.2d 10, 12. Accordingly, just cause under R.C. 4141.29(D)(2)(a) is predicated upon employee fault:
 {¶ 27} "When an employee is at fault, he is no longer the victim of fortune's whims, but is instead directly responsible for his own predicament. Fault on the employee's part separates him from the [Unemployment Compensation] Act's intent and the Act's protection. Thus, fault is essential to the unique chemistry of a just cause termination."Tzangas at 697-698.
 {¶ 28} Moreover, a just cause determination must be consistent with the purpose of the Unemployment Compensation Act. Id. at 697. "[W]hile a termination based upon an employer's economic necessity may bejustifiable, it is not a just cause termination when viewed through the lens of the legislative purpose of the Act." Id.
 {¶ 29} In Irvine, the Supreme Court of Ohio set forth the legislative purpose underlying the Act:
 {¶ 30} "Essentially, the Act's purpose is `to enable unfortunate employees, who become and remain involuntarily unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day.' *** Likewise, `[t]he act was intended to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own.'" (Citations omitted and emphasis sic.) Id. at 17.
 {¶ 31} With the foregoing legal principles in mind, we consider appellant's sole assignment of error. Therein, appellant contends that the trial court erred in reversing the decision of the review commission as there is competent, credible evidence in the record to support its determination that appellee was not entitled to unemployment compensation benefits. To support its position, appellant submits that pursuant toBrownlee v. Bd. of Review Bur. of Emp. Services (June 26, 1975), 8th Dist. No. 34070, 1975 Ohio App. LEXIS 6942, appellee's discharge for violating the contract provision against repeated garnishments is a discharge for just cause in connection with work, thus precluding the receipt of unemployment compensation benefits.
 {¶ 32} We take notice of the fact that several Ohio courts have been presented with a similar issue. For instance, appellant relies onBrownlee, wherein the claimant was discharged by his employer for violation of the company's rule relating to excessive garnishments. Specifically, the company rule provided for the immediate discharge of an employee who incurred wage attachments in excess of two within six months. During his employment, the claimant received three orders of attachment and notices of garnishment within a six-month period. Despite the fact that the claimant secured releases on two of the three garnishment notices, he was discharged and subsequently denied unemployment compensation benefits by the board of review. The trial court, however, determined that the board of review's decision was contrary to law. Brownlee at 1-4.
 {¶ 33} Upon consideration, the Eighth Appellate District disagreed with the trial court's determination and upheld the board of review's denial of unemployment compensation benefits:
 {¶ 34} "[The claimant] incurred more than two `binding' wage attachments within a six month period and was therefore in violation of [the company's] work rule ***. We further hold that based upon our review of the entire record, including the transcript of testimony taken before the Board of Review that the evidence presented demonstrated that under the circumstances of [the claimant's] employment his discharge based on excessive garnishments was a discharge for just cause in connection with work, pursuant to R.C. 4141.29 and therefore that [the claimant] was not entitled to unemployment benefits." Brownlee at 6-7.
 {¶ 35} However, a more recent case found to the contrary. InEckels v. Giles (Dec. 19, 1985), 5th Dist. No. CA-2336, 1985 Ohio App. LEXIS 9938, the claimant was discharged for receiving five garnishment notices in violation of the labor-management contract. Although the claimant made payment to the creditor, he did not inform his employer of this. The claimant was subsequently discharged, and he was denied unemployment compensation benefits. Eckels at 1-4.
 {¶ 36} Upon review by the Fifth Appellate District, the court determined that the claimant's discharge was not for just cause in connection with his work and, as such, was entitled to unemployment compensation benefits:
 {¶ 37} "`It seems unreasonable and against the manifest weight of the evidence to hold that an employee was discharged with just cause in connection with his work when in fact, he was discharged because he or the lending institution failed to notify the employer that the debt had been paid. The employee in this case was not fired because of notice of garnishment was received. He was fired because the employer had to withhold money from his check. It[']s important to this case that the discharge and deduction took place at the same time and that both occurred after the debt had been paid. The discharge and the deduction from the employee's pay took place not in connection with the employee's work, but because of a failure to notify of the payment of the debt."Eckels at 4-5. See, also, Harp v. Admr., Bur. of Unemployment Comp.
(1967), 41 O.O.2d 25, 12 Ohio Misc. 34 (concluding that "to hold that service on an employer of two garnishment notices within a period of one year in violation of a company rule to that effect, without more is a discharge for just cause in connection with work would be unreasonableand not at all what was contemplated by the Legislature in enactingSection 4141.29, Revised Code."); Chester v. First Fed. Sav. LoanAssoc. (1959), 82 Ohio Law Abs. 182; (holding that if there is no deliberate violation of the employer's rule, no willful disregard of the employer's interest, and no suggestion of unsuitability for the work performed, then the claimant should be allowed unemployment benefits);Chalker v. First Fed. Sav. Loan (1955), 71 Ohio Law Abs. 87.
 {¶ 38} With the foregoing split in authority in mind, we consider the instant appeal. To recapitulate, the review commission found the existence of just cause for appellee's discharge based upon his receipt of three garnishments within a twelve-month period, in violation of the labor-management contract provision. The trial court, however, reversed the decision of the review commission and found it to be unlawful, unreasonable and against the manifest weight of the evidence.
 {¶ 39} The determination of whether just cause exists for purposes of unemployment compensation law necessarily depends upon the unique facts and circumstances of each case. Tzangas at 698; Irvine at 17;Chester, supra. We are required to review the totality of the circumstances in deciding whether an employee's valid, contractual discharge for garnishments was also a discharge for just cause for purposes of unemployment compensation. Furthermore, "[w]hether, considering all circumstances, a reason for terminating a claimant's employment constitutes `just cause' is a question of law." Lombardo v.Ohio Bur. of Emp. Services (1997), 119 Ohio App.3d 217, 221.
 {¶ 40} In the instant matter, there was no claim that appellee's work performance was affected by his garnishments. Further, appellee presented no specific evidence of any detrimental or adverse impact on itself. In other words, appellee was not discharged as a result of his work performance; rather, he was discharged for breaching the labor-management contract provision against repeated garnishments.
 {¶ 41} "A mere violation of a company work rule does not always rise to the level of fault required on the part of the employee to justify the denial of unemployment benefits. *** In determining whether [the] employee has been discharged for `just cause' for unemployment compensation purposes, the critical issue is not whether [the] employeehas technically violated some company rule, but whether [the] employee byhis or her actions demonstrated unreasonable disregard for [the]employer's best interest." (Emphasis added.) Apex Paper Box Co. v. OhioBur. of Emp. Services (May 11, 2000) 8th Dist. No. 77423, 2000 WL 573174, at 2. See, also, Fredon Corp v. Zelenak (1997),124 Ohio App.3d 103, 109; Janovsky at 694; Piazza v. Ohio Bur. of Emp.Services (1991), 72 Ohio App.3d 353, 357. "The conduct need not rise to the level of misconduct, but the employer must demonstrate some showing of fault on the part of the employee." Fredon at 109.
 {¶ 42} Of course, Coe Manufacturing had cause to discharge appellee for breaching the provision of the labor-management contract relating to excessive garnishments. However, the mere fact that Coe Manufacturing had cause to discharge appellee does not mean that appellee was discharged for just cause for purposes of unemployment compensation law. The point being that there is a distinction between the existence of "just cause" for discharge and "cause" for discharge. Accordingly, the issue in this case is whether appellee was discharged for just cause, thereby precluding him from receiving unemployment compensation benefits.
 {¶ 43} Let us assume, arguendo, that the labor-management contract provision against repeated garnishments was reasonable and administered in a fair manner. Under the totality of the circumstances, appellee's discharge for obtaining three garnishments within a one-year period does not constitute a discharge for just cause in connection with his work.
 {¶ 44} Here, appellee testified that during his employment with Coe Manufacturing, he sustained a back injury which kept him out of work for a significant period of time and resulted in the accumulation of many bills. Although the ODJFS found "sufficient fault," the review commissionnever made a finding that appellee deliberately violated the garnishment rule, or that appellee unreasonably disregarded the employer's best interest, or that appellee was unsuitable for his employment. See, generally, Fredon at 109; Janovsky at 694; Piazza at 357; Apex at 2;Chester, supra.
 {¶ 45} In fact, the evidence showed that two days after receiving the second garnishment, appellee retained an attorney for the purpose of filing for bankruptcy to protect himself from further garnishments. Despite his efforts, the bankruptcy petition was filed after the receipt of the third garnishment.[1] "Without evidence of a deliberate and willful violation of a specific order, or established rule, there is not sufficient evidence to support a finding of just cause for [an employee's] termination." Sindel v. EBCO Mfg. Co., Inc. (1991),71 Ohio App.3d 426, 429. Accordingly, there was evidence that appellee's garnishment resulted from the expenses of an injury and that he attempted to comply with the garnishment provision contained in the labor-management contract by retaining an attorney for purposes of filing for bankruptcy prior to the issuance of the third garnishment.
 {¶ 46} Therefore, under these particular facts, we hold that appellee's discharge for cause did not constitute a discharge for just cause for purposes of unemployment compensation. As such, appellee is entitled to unemployment compensation benefits.
 {¶ 47} Based on the foregoing analysis, appellant's single assignment of error is without merit, and the judgment of the trial court is affirmed.
DONALD R. FORD, J., concurs.
DIANE V. GRNENDELL, J., dissents with dissenting opinion.
[1] These facts were mentioned in the hearing officer's determination of January 12, 2001.