[Cite as *Cittadini v. Dir., Ohio Dept. of Job & Family Servs.*, 2011-Ohio-6625.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 96370

---

## LYNDA CITTADINI

### PLAINTIFF-APPELLANT

vs.

## DIRECTOR, OHIO DEPARTMENT OF JOB & FAMILY   SERVICES, ET AL.

### DEFENDANTS-APPELLEES

---

### JUDGMENT:
### REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-720137

**BEFORE:**   Jones, J., Boyle, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:**   December 22, 2011

**ATTORNEY FOR APPELLANT**

Denise J. Knecht
4415 Euclid Avenue
Suite 310
Cleveland, Ohio 44103


**ATTORNEYS FOR APPELLEES**

**For Ohio Department of Job & Family Services**

Mike DeWine
Ohio Attorney General

BY: Patrick MacQueeney
Assistant Attorney General
615 West Superior Avenue
11th Floor
Cleveland, Ohio 44113

**For Southwest General Health Center, Inc.**

Izoduwa E. Ebose-Holt
Susan C. Hastings
Squire, Sanders & Dempsey
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114

LARRY A. JONES, J.:

{¶ 1} Plaintiff-appellant, Lynda Cittadini, appeals the trial court's judgment affirming the decision of the unemployment compensation review commission denying her application for unemployment compensation. We reverse and remand.

## I. Procedural History and Facts

{¶ 2} In July 2009, Cittadini filed a claim for unemployment compensation benefits with defendant-appellee, Ohio Department of Job and Family Services ("ODJFS"). ODJFS issued an initial determination of benefits denying the claim on the basis that Cittadini was discharged by her employer, Southwest General Hospital, for just cause under R.C. 4141.29(D)(2)(a). Cittadini appealed.

{¶ 3} ODJFS issued a redetermination of benefits affirming its initial determination. Cittadini appealed again and the matter was transferred to the unemployment compensation review commission. After a hearing, the commission issued a decision affirming the redetermination of benefits and denying Cittadini's claim on the basis that she was discharged for just cause. Cittadini's request for review was denied. She then filed an appeal in the trial court. The trial court affirmed the commission's decision.

{¶ 4} Cittadini worked for six years at Southwest General Hospital as a telecommunications operator. On the day of the underlying incident, she was working the 4:00 p.m. to 7:00 p.m. shift. Cittadini testified that she was sick that day but came to work anyway because she knew the department was shorthanded. Additionally, that was a very busy time of day for the operators because the physicians' offices would generally close during that time period and would call to "check out" and tell the operators who was "on call."

{¶ 5} The hearing testimony demonstrated that the operators routinely kept ice at

their desks because their throats often became dry from talking on the phone. One of Cittadini's coworkers, Heidi Boone, testified that they "chopped" the ice with "plastic forks, knives, spoons, all that stuff from the cafeteria and different places * * *." Other knives from the employees' kitchen were available for the operators' use and according to the hospital's employment manager, they would bring the knives from the kitchen to their work stations.

{¶ 6} Cittadini testified that on the day of the incident, a coworker had put a cup of water in the freezer for her and when the coworker retrieved it for Cittadini, it was "frozen solid." According to Cittadini, it was very busy and she did not want to leave her desk, so she "fished around" in her purse for something to break the ice with and found a knife that she was unaware she even had. The knife was in its original packaging. The hospital described the knife as a "switchblade knife," and Cittadini described it as a "pocket knife" with a "lever that you have to push in to release it." A picture of the knife shows that it was approximately four inches long when closed and over seven inches long when opened.

{¶ 7} Boone testified that she and other coworkers had been trying to get Cittadini to go home because she was sick and they were concerned about getting sick too. Later, Boone saw Cittadini opening and closing the knife and told Cittadini that having the knife was illegal, but Cittadini was dismissive. Boone testified that she told Cittadini she "really needed to go home and shouldn't come in when she was sick * * *." Cittadini responded by throwing an ice chip at Boone. Boone testified that Cittadini saw that she

was upset and was "trying to lighten the mood."  Cittadini testified that she threw the ice chip at Boone because they were "friends and [she] was just fooling around."

{¶ 8}  After Cittadini threw the ice chip at Boone, Cittadini was clocking out to go home and Boone told her again that she should not have come to work so Cittadini "flipped a cough drop at her" and said "here have a cough drop."

{¶ 9}  After thinking overnight about Cittadini having a knife at work, Boone decided that she "had to report it because of policy."  She testified that she was "afraid if [she] didn't report it [she] would be fired if it was found out."  Boone did report the incident and Cittadini was fired for possessing a deadly weapon in violation of the hospital's policy.

{¶ 10} Cittadini's husband testified that the knife belonged to him.  According to the husband, he and his wife had been shopping and when they arrived home he retrieved the grocery store bags and she took the bag with the knife.  The husband testified that he bought the knife because they go to cheese houses in Amish country and never had anything in the car to cut the cheese with.

{¶ 11} The hospital's firearm and deadly weapon policy defines a deadly weapon as "[a]ny instrument, device, or thing capable of inflicting death, and designed or specifically adapted for use a weapon, or possessed, carried, or used as a weapon.  Deadly weapons include such things as knives, clubs, hammers, batons and other edged weapons."

{¶ 12} The hospital's "guidelines for determining levels of discipline" "recommends" discharge upon the first infraction for "unauthorized possession of

firearms, weapons or dangerous substances while performing job duties on the premises." The guidelines state that they "are not inclusive but can be used to ensure uniformity in the application of corrective action by management. Each case must be considered on pertinent facts and the measure of discipline imposed accordingly."

{¶ 13} In denying Cittadini's claim, the Commission focused on the competing testimony about what kind of knife it was, and citing the dictionary definition of a switchblade, found that the knife "clearly fits the definition of a switch blade knife." The Commission, therefore, concluded that Cittadini's conduct was a "clear violation of the Firearm/Deadly Weapons Policy and provides just cause for discharge." The trial court affirmed the finding without elaboration.

{¶ 14} Cittadini's sole assigned error reads:

"The lower court erred in upholding the decision of the review commission of the Ohio Department of Job and Family Services that was unreasonable, arbitrary, and against the manifest of evidence."

II. Law and Analysis

{¶ 15} R.C. 4141.282 governs appeals to the court of common pleas challenging the denial of unemployment compensation benefits by the commission, and provides:

{¶ 16} "The court shall hear the appeal on the certified record provided by the commission. If the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission." R.C. 4141.282(H).

{¶ 17} This is the standard of review for unemployment compensation appeals, regardless of the level of appellate review. *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 696, 1995-Ohio-206, 653 N.E.2d 1207. In reviewing commission decisions, a court is not permitted to make factual findings or reach credibility determinations. Id., citing *Irvine v. Unemployment Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 18, 482 N.E.2d 587. Similarly, it may not substitute its judgment on such issues for that of the commission. *McCarthy v. Connectronics Corp.*, 183 Ohio App.3d 248, 2009-Ohio-3392, 916 N.E.2d 871, ¶16, citing *Irvine* at id. Instead, a court must "determine whether the [commission's] decision is supported by the evidence in the record." Id. Therefore, the focus of the analysis is on the commission's decision, "rather than that of the common pleas court." *Carter v. Univ. of Toledo*, Lucas App. No. L-07-1260, 2008-Ohio-1958, ¶12, citing *Markovich v. Employers Unity, Inc.*, Summit App. No. 21826, 2004-Ohio-4193, ¶10, citing *Barilla v. Dir., Ohio Dept. of Job & Family Servs.*, Lorain App. No. 02CA008012, 2002-Ohio-5425, ¶6. Judgments supported by some competent, credible evidence on the essential elements of the controversy may not be reversed as being against the manifest weight of the evidence. *Carter* at id., citing *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus.

{¶ 18} Upon review, we find that the commission's finding that Cittadini was terminated for just cause was unreasonable and against the manifest weight of the evidence. Having reviewed the pictures of the knife, there is no doubt it could be classified as a deadly weapon, whether it was a "switchblade" or a "pocket knife" with a

"lever that you have to push in to release it." But the review should not have stopped at that determination, which is where it did for the commission. Discharge was the recommended, not mandatory, level of discipline for a violation of the hospital's deadly weapons policy.[1] The hospital's guidelines stated that "[e]ach case must be considered on pertinent facts and the measure of discipline imposed accordingly."

{¶ 19} The Ohio Supreme Court has stated that "just cause" is "'that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.'" *Irvine* at 17, quoting *Peyton v. Sun T.V. & Appliances* (1975), 44 Ohio App.2d 10, 12, 335 N.E.2d 751. The determination whether there is just cause for discharge depends upon the factual circumstances of each case. *Warrensville Hts. v. Jennings* (1991), 58 Ohio St.3d 206, 207, 569 N.E.2d 489.

{¶ 20} On the facts of this case, we do not find just cause for Cittadini's termination. Cittadini only used the knife to chip frozen ice, as even acknowledged by the hospital's employment manager. She got the knife out of her purse so that she would not have to leave her work station during a particularly busy time. There was no evidence that she threatened anyone, used the knife in a threatening manner, or even knowingly brought the knife into the hospital. The gist of Boone's testimony was that

---

[1] In a letter from the hospital's employment manager to the redetermination unit requesting that Cittadini's claim be disallowed, the manager stated that "[a]nyone who violates this policy is terminated on the first offense." The letter also states that Cittadini disregarded the "warnings" from Boone that she was in violation of the policy. There is no indication in the record, however, that Boone was an employee qualified to "warn" Cittadini of infractions of the policy.

she was upset that Cittadini came to work sick, not that she felt threatened by her. And, in fact, Boone also violated the hospital's policy requiring that employees "should not confront any individual suspected of carrying a [deadly weapon], but rather they are to immediately contact Protection Services."

{¶ 21} In *Williams v. Ohio Dept. of Job & Family Services*, 129 Ohio St.3d 332, 2011-Ohio-2897, 951 N.E.2d 1031, the Ohio Supreme Court declined to adopt a standard that reviews whether the employer's policy was fairly applied to everyone. Specifically, the court found that it was not necessary to adopt such a standard because the case could be, and was, decided on the employer's express condition of employment, rather than on company policy. Thus, the Ohio Supreme Court did not reject such a standard. This court has previously adopted the "fairly applied policy." See *Shaffer v. Am. Sickle Cell Anemia Assn.* (June 12, 1986), Cuyahoga App. No. 50127 ("termination pursuant to company policy will constitute just cause only if the policy is fair, and fairly applied.").

{¶ 22} Here, although both Cittadini and Boone violated the hospital's policy, only Cittadini suffered consequences.[2] Moreover, the record reflects that the operators often brought knives from the kitchen to their desks. Although the employment manager testified that the knives were "utensil butter knives," a picture of some of the knives in the kitchen[3] shows that they were butcher knives, which could be considered deadly weapons as well.

---

[2]The hospital's guidelines for determining levels of discipline recommend discipline for "failure to follow hospital or departmental policies procedures or instructions."

{¶ 23} On this record, we find the commission's decision finding just cause for Cittadini's termination, and the trial court's judgment affirming the decision, unreasonable and against the manifest weight of the evidence. The trial court's judgment is, therefore, reversed and the case is remanded.

It is ordered that appellant recover of appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

LARRY A. JONES, JUDGE

MARY J. BOYLE, P.J., CONCURS;
KENNETH A. ROCCO, J., DISSENTS
WITHOUT OPINION

---

[3]See exhibit D of Director's file.