[Cite as *King v. Dir., Ohio Dept. of Job & Family Servs.*, 2023-Ohio-1724.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Jonathan King, | : | |
| Appellant-Appellant, | : | No. 22AP-602<br>(C.P.C. No. 22CV-58) |
| v. | : | (REGULAR CALENDAR) |
| Director, Ohio Department of Job [and]<br>Family Services et al., | : | |
| | : | |
| Appellees-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on May 23, 2023

**On brief:** *Jonathan King*, pro se.

**On brief:** *Dave Yost*, Attorney General, and *David E. Lefton*
for appellee, Director, Ohio Department of Job and Family
Services. **Argued:** *David E. Lefton*.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

**{¶ 1}** Appellant, Jonathan King, appeals from a judgment of the Franklin County
Court of Common Pleas affirming the order of the Unemployment Compensation Review
Commission ("commission") denying King's claim for pandemic unemployment assistance
("PUA") benefits. For the following reasons, we affirm.

**I. Facts and Procedural History**

**{¶ 2}** In May 2020, approximately two months after the COVID-19 public health
emergency began in Ohio, King left his employment as an Amazon warehouse worker and
applied for PUA benefits. His application was approved, and for approximately one year,
he received PUA benefits. However, in July and August 2020, the Ohio Department of Job

and Family Services ("ODJFS") notified King that he did not meet the eligibility requirements to receive PUA benefits, and, as a result, he had been overpaid $10,081. King appealed to the commission, and the matter was heard by a commission hearing officer. On October 22, 2021, the hearing officer mailed a decision affirming the prior determination that King did not qualify for PUA benefits during the pertinent time period. King requested further review by the commission, which was denied. King then appealed to the trial court. Separately, ODJFS granted King's request to waive overpayment collection.

{¶ 3} In King's appeal before the trial court, the Director argued the commission correctly found King was not eligible for PUA benefits. King did not file a brief. The trial court affirmed the commission order denying further review of the denial of King's request for PUA benefits. King timely appeals from the trial court's judgment.

## II. Assignment of Error

{¶ 4} King presents the following sole assignment of error for our review:

> The trial court erred and abused its discretion in dismissing appellant's action.

## III. Discussion

{¶ 5} In his sole assignment of error, King alleges the trial court erred in dismissing his action. He claims the trial court dismissed his appeal for failure to prosecute pursuant to Civ.R. 41(B)(1). We disagree. This rule states: "Failure to prosecute. Where the plaintiff fails to prosecute, or comply with these rules or any court order, the court upon motion of a defendant or on its own motion may, after notice to the plaintiff's counsel, dismiss an action or claim." Contrary to King's argument, the trial court did not dismiss his appeal pursuant to this rule. The trial court reached the merits of his administrative appeal and determined the commission's decision was supported by the evidence and not contrary to law. It therefore affirmed the denial of King's request for PUA benefits.

{¶ 6} Thus, at issue is whether the trial court erred in affirming the commission's order disallowing King's request for PUA benefits. R.C. 4141.282 governs appeals from decisions of the commission. The statute provides:

> The court shall hear the appeal on the certified record provided
> by the commission. If the court finds that the decision of the

> commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission.

R.C. 4141.282(H). This means a reviewing court may reverse a commission decision "only if it is unlawful, unreasonable or against the manifest weight of the evidence." *Tzangas, Plakas & Mannos v. Admr., Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694 (1995), paragraph one of the syllabus. This standard applies in "all reviewing courts, from the first level of review in the common pleas court, through the final appeal in" the Supreme Court of Ohio. *Id.* at 696. Therefore, the focus of this court's analysis is on the commission's decision rather than the common pleas court's decision. *Houser v. Dir., Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 10AP-116, 2011-Ohio-1593, ¶ 7, citing *Carter v. Univ. of Toledo*, 6th Dist. No. L-07-1260, 2008-Ohio-1958, ¶ 12. And pursuant to this standard, a reviewing court "is not permitted to make factual findings or reach credibility determinations." *Id.* at ¶ 7, citing *Tzangas* at 696, citing *Irvine v. Unemp. Comp. Bd. of Rev.*, 19 Ohio St.3d 15, 18 (1985). "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

{¶ 7} In response to the onset of the COVID-19 pandemic in March 2020, the United States Congress passed, and the President signed into law, the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"). Among other things, the CARES Act created the PUA program, which is administered through the states, to provide benefits to "covered individuals." *See* 15 U.S.C. 9021. For this purpose, a "covered individual" is an individual not eligible for any other form of unemployment benefits, and is otherwise able and available to work, but is unemployed because:

> (aa) the individual has been diagnosed with COVID-19 or is experiencing symptoms of COVID-19 and seeking a medical diagnosis;

> (bb) a member of the individual's household has been diagnosed with COVID-19;

(cc) the individual is providing care for a family member or a member of the individual's household who has been diagnosed with COVID-19;

(dd) a child or other person in the household for which the individual has primary caregiving responsibility is unable to attend school or another facility that is closed as a direct result of the COVID-19 public health emergency and such school or facility care is required for the individual to work;

(ee) the individual is unable to reach the place of employment because of a quarantine imposed as a direct result of the COVID-19 public health emergency;

(ff) the individual is unable to reach the place of employment because the individual has been advised by a health care provider to self-quarantine due to concerns related to COVID-19;

(gg) the individual was scheduled to commence employment and does not have a job or is unable to reach the job as a direct result of the COVID-19 public health emergency;

(hh) the individual has become the breadwinner or major support for a household because the head of the household has died as a direct result of COVID-19;

(ii) the individual has to quit his or her job as a direct result of COVID-19;

(jj) the individual's place of employment is closed as a direct result of the COVID-19 public health emergency; or

(kk) the individual meets any additional criteria established by the Secretary for unemployment assistance under this section.

15 U.S.C. 9021(a)(3)(A)(aa) through (kk).

{¶ 8} Here, the evidence before the commission demonstrated, after the COVID-19 public health emergency began, King left his employment as an Amazon warehouse worker due to his fear of contracting this disease. But an individual's general fear of exposure to COVID-19 at the workplace is not one of the listed qualifying conditions set forth in 15 U.S.C. 9021(a)(3)(A)(aa) through (kk). And King did not present evidence that otherwise

would support a finding that one of those qualifying conditions caused him to leave his employment. Therefore, because King did not demonstrate that a qualifying condition was the basis for his leaving work, he did not meet the definition of a "covered individual," and the commission correctly determined that he was not entitled to PUA benefits.

{¶ 9} Accordingly, we overrule King's sole assignment of error.

## IV. Disposition

{¶ 10} Having overruled King's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

EDELSTEIN and LELAND, JJ., concur.

———————————————