JANOVSKY, Appellee,

v.

**OHIO BUREAU OF EMPLOYMENT SERVICES et al., Appellants.**

[Cite as *Janovsky v. Ohio Bur. of Emp. Serv.* (1996), 108 Ohio App.3d 683.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. CA 15382.

Decided Jan. 24, 1996.

*Kathy L. Ellison,* for appellee.

*John W. Ferron* and *Anna M. Seidensticker,* for appellant Walnut Creek Nursing Center.

*Betty D. Montgomery,* Attorney General, and *David E. Lefton,* Assistant Attorney General, for appellant Administrator, Ohio Bureau of Employment Services.

---

FREDERICK N. YOUNG, Judge.

Appellants Walnut Creek Nursing Center and the Ohio Bureau of Employment Services ("OBES") appeal from the trial court's judgment reversing an earlier OBES ruling and awarding Eileen Janovsky unemployment benefits. In their sole assignment of error, the appellants claim that the trial court erred when it concluded that Walnut Creek fired Janovsky without just cause.

Janovsky's discharge stems from a co-worker's tip to Walnut Creek administrators that Janovsky possessed an open bottle of wine in her car. The vehicle was

parked in an employee parking lot on Walnut Creek property immediately behind the nursing center.

Walnut Creek's employee handbook provides that employees may be terminated for violating "Class I" work rules, which include "[b]eing in possession of, using, or selling alcoholic beverages, narcotics or illegal drugs while on the premises." Janovsky had received and reviewed a copy of the handbook containing this rule.

As a result of its handbook policy, Walnut Creek administrators called a police officer to the facility on October 7, 1993. The officer and four Walnut Creek managers met Janovsky in the parking lot as she left work, and Janovsky admitted having an open container of alcohol in her car. At the officer's request, Janovsky retrieved the wine bottle, which had a broken seal and was partially empty, and poured its contents on the ground. A nursing facility administrator then fired Janovsky for violating Walnut Creek's rule prohibiting possession of alcoholic beverages on the premises.

Janovsky subsequently applied for unemployment benefits, and the administrator of the OBES granted her application, finding no just cause for her dismissal. Thereafter, Walnut Creek filed a request for reconsideration, and the OBES administrator's decision was affirmed. The nursing center then instituted an appeal to the OBES Board of Review, which reversed the OBES administrator's decision and disallowed Janovsky's claim for benefits. The review board held that Janovsky's violation of Walnut Creek's prohibition against possessing alcoholic beverages on the premises constituted just cause for her dismissal.

After the review board rejected Janovsky's application to institute a further appeal, she sought relief in the Montgomery County Common Pleas Court, which reversed the review board's ruling and reinstated the OBES administrator's decision awarding Janovsky unemployment benefits. The OBES and Walnut Creek subsequently filed timely appeals, claiming that the trial court erred in finding the review board's decision unreasonable, unlawful, and against the manifest weight of the evidence.

■ Like the trial court, we begin our resolution of the appellants' claim by adopting a "manifest weight of the evidence" standard of review. In *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.* (1995), 73 Ohio St.3d 694, 696–697, 653 N.E.2d 1207, 1210–1211, the Ohio Supreme Court explained that the Revised Code section "setting forth the appeals process for unemployment compensation cases does not create distinctions between the scope of review of common pleas courts and appellate courts." Consequently, the court concluded that applying the same review standard at each appellate level is proper. *Id.* at 697, 653 N.E.2d at 1210. See, also, *Biles v. Ohio Bur. of Emp. Serv.* (1995), 107 Ohio

App.3d 114, 121, 667 N.E.2d 1244, 1249 (interpreting *Tzangas, Plakas & Mannos* to mean that "reviewing courts are not to review the decision of the trial courts under an abuse of discretion standard, but rather are to review the decisions of the board with the same standard as must be used by the trial court, that is, whether a decision of the board is unlawful, unreasonable, or against the manifest weight of the evidence"); *Galluzzo v. Ohio Bur. Emp. Serv.* (Nov. 29, 1995), Champaign App. No. 95–CA–6, unreported, 1995 WL 704193 (citing *Tzangas, Plakas & Mannos* and concluding that an appellate court's standard of review in "just cause" unemployment benefits cases "is the same as the trial court, that is, whether the decision of the board is [un]lawful, unreasonable, or against the manifest weight of the evidence").

The central issue for our review is whether the trial court erred when it concluded that "a reasonable person would not comprehend that the employee handbook prohibited temporary storage of alcohol within the employee's vehicle located in the employer's parking lot." The trial court reached this conclusion based upon its belief that a reasonable person would not construe the nursing home's prohibition against alcohol "on the premises" to include alcohol located outside the building but still on Walnut Creek property.

The trial court supported its interpretation of "on the premises" by reading the phrase in light of the purpose underlying Walnut Creek's anti-alcohol policy. In so doing, the trial court reasoned:

"The obvious goal of this rule is to protect the patients of Walnut Creek. Possession and use of alcohol within the nursing home clearly violates this purpose. An intoxicated nurse lacks the physical and intellectual faculties to insure the well-being of the patients. The presence of alcohol in the facility also threatens the patients. The patients['] close proximity to the alcohol increases the likelihood that the patients will obtain possession of the alcohol and endanger their health. Thus, the use and possession of alcohol within the employer's facility violates the purpose of the rule.

"Possession of alcoholic beverages outside of the physical facilities alone, however, does not violate the purpose and goal of the company rule. Possession outside of the facility decreases the likelihood of a patient improperly gaining access to the alcohol. The presence of alcoholic beverages within an employee's automobile does not threaten the health and safety of the nursing home residents. A reasonable person, understanding the purpose and goal of the employer's rule, would not interpret the rule to include alcohol located within [an employee's] automobile."

Based upon this analysis, the trial court found no just cause supporting Walnut Creek's decision to fire Janovsky. Since Walnut Creek had not informed

Janovsky, either expressly or through a reasonable interpretation of its employee handbook, that it prohibited storing or placing alcohol in a vehicle on its property, the court held Janovsky's termination unjustified. "Absent a finding of intentional disregard for a known company rule, the Board of Review's reversal was unreasonable, unlawful, and against the manifest weight of the evidence," the trial court explained.

We disagree with the trial court's holding. Ohio law provides that no individual discharged for just cause may receive unemployment benefits. *Tzangas, Plakas & Mannos, supra*, 73 Ohio St.3d at 697, 653 N.E.2d at 1210–1211; R.C. 4141.29(D)(2)(a). As the trial court properly notes, however, "[t]he critical issue is not whether the employee has technically violated some company rule." *Piazza v. Ohio Bur. of Emp. Serv.* (1991), 72 Ohio App.3d 353, 357, 594 N.E.2d 695, 698. Rather, just cause for dismissal exists when an employee's actions demonstrate an unreasonable disregard for an employer's best interests. *Id.; Kiikka v. Ohio Bur. of Emp. Serv.* (1985), 21 Ohio App.3d 168, 169, 21 OBR 178, 179–180, 486 N.E.2d 1233, 1234. Furthermore, a just cause termination requires some demonstration of fault on the employee's part. *Tzangas, Plakas & Mannos, supra*, 73 Ohio St.3d at 697–698, 653 N.E.2d at 1210–1212.

In the present case, we believe Janovsky ignored a clear prohibition against alcohol on Walnut Creek's premises. By possessing alcohol in her car, she disregarded her employer's best interests, and she is at fault. She is not "the victim of fortune's whims, but is instead directly responsible for h[er] own predicament." *Id.* Therefore, we hold that the trial court erred in reversing the review board and reinstating the OBES administrator's ruling. The review board's decision was not unlawful, unreasonable, or against the manifest weight of the evidence.

We base this holding on the trial court's unduly narrow interpretation of the phase "on the premises." Although "premises" is not defined in R.C. Chapter 4141 or the Walnut Creek employee handbook, words or phrases not defined by Ohio statutory law should " 'be read in context and construed according to the rules of grammar and common usage.' " *State v. Isreal* (1993), 86 Ohio App.3d 696, 699, 621 N.E.2d 793, 795, quoting R.C. 1.42.

The Twelfth District Court of Appeals has defined "premises" as a "specified piece or tract of land with the structures on it." *Id.,* quoting Webster's Third New International Dictionary (1986) 1789. Likewise, the Tenth District in *State v. Brittman* (Feb. 10, 1994), Franklin App. No. 93AP–1005, unreported, 1994 WL 41308, defined "premises" as " 'a tract of land including its buildings' " or " 'a building together with its grounds or other appurtenances.' " *Id.,* quoting Random House Dictionary of the English Language (2 Ed.1987). Additionally,

the Eleventh District in *Faber v. R.J. Frazier Co.* (1991), 72 Ohio App.3d 9, 13, 593 N.E.2d 410, 413, concluded that an employer's fenced property, "which includes the plant, parking lots, and access road, comprised the employment premises."

Similarly, portions of the Revised Code not at issue in the present appeal also define "premises" to include not only a building, but also the surrounding land. See R.C. 1533.18(A) (defining "premises" in the context of Ohio's recreational user statute as "all privately-owned lands, ways, waters, and any buildings and structures thereon, and all state-owned lands, ways, and waters leased to a private person, firm, organization, or corporation, including any buildings and structures thereon"); R.C. 5321.01(C) (defining "residential premises" as "a dwelling unit for residential use and occupancy and the structure of which it is a part, the facilities and appurtenances in it, and the grounds, areas, and facilities for the use of tenants generally or the use of which is promised the tenant"); R.C. 2925.01(R) (defining "school premises" as "the parcel of real property on which any school is situated").

We acknowledge, however, that "premises" may have a narrower meaning in a particular context. See Black's Law Dictionary (6 Ed.1991) 818 (defining premises generally as "land with its appurtenances and structures thereon," but noting that "[p]remises is an elastic and inclusive term, and it does not have one definite and fixed meaning; its meaning is to be determined by its context and is dependent on circumstances in which used, and may mean a room, shop, building, or any definite area").

Nevertheless, in the present case we construe the employment handbook's use of "premises" as encompassing all Walnut Creek property and not just the nursing building. In an analogous case, *Xenia v. Berry* (Jan. 19, 1994), Greene App. No. 93–CA–39, unreported, 1994 WL 12494, this court considered whether the appellant had violated a temporary protection order prohibiting her from entering her husband's "residence." A police officer had issued the appellant a citation after finding her standing in her husband's driveway. Holding that "residence" included more than just a house, we explained:

"We need not, however, rely simply on a dictionary definition of the term in question. When used in a legal document, the true inquiry is what is the purpose of the document, for its purpose informs the meaning of the words used in the document. The purpose of a temporary protection order is to provide the aggrieved spouse with protection from the advances, threats, annoyances, or any other type of hostile behavior by the aggressive spouse at the locations mentioned in the order. * * * An aggrieved spouse is certainly entitled to the understanding that a safe haven at his home encompasses the grounds which he owns and upon which the home is located and which, in effect, complete the totality of his

residence by providing certainly desirable and sometimes necessary features such as a garage, a driveway, lawns, plantings, and other accouterments that convert a mere building into a 'home.' "

Similarly, in the present case we look to the purpose of Walnut Creek's rule prohibiting the possession of alcohol "on the premises." We agree with the trial court that the rule is designed to protect Walnut Creek's patients. We also agree that a nurse's possession or use of alcohol in the nursing home violates this purpose. As the trial court recognized, an intoxicated nurse is a danger to her patients, and the mere presence of alcohol increases the likelihood that patients will become intoxicated and endanger their health.

However, we reject the trial court's conclusion that a nurse's possession of alcohol outside the nursing home, but on the property, does not threaten patients' safety. The trial court correctly reasoned that possession outside the home would be unlikely to result in patients obtaining the alcohol. Furthermore, we agree that mere possession of alcohol, standing alone, would not result in intoxicated nurses. The danger that the Walnut Creek rule recognizes, however, is that "possession" increases the likelihood that "use" will follow. The rule represents a rational attempt to prevent staff drunkenness by limiting employees' access to alcohol during work hours. The potential harm to patients' safety lies in a nurse's ability to enter her automobile during lunch or work breaks and consume alcohol. Indeed, in the present case a co-worker alleged that Janovsky "often goes to Meijers or Krogers, which is right around the corner, and often drinks from a brown paper bag that was in the back of her car." Although the board of review made no findings regarding Janovsky's actual use of alcohol, the allegation illustrates the type of problem that Walnut Creek's rule seeks to avoid.

Additionally, as the appellants stress, under the trial court's narrow interpretation of "premises," Janovsky actually could consume alcohol on the Walnut Creek parking lot. As we explained above, the trial court determined that Walnut Creek's parking lot was not part of the "premises." Consequently, the rule prohibiting the possession, use, or sale of alcohol "on the premises" would not apply. We do not believe Walnut Creek intended such a result when it drafted its employee handbook.

Finally, the language of Walnut Creek's rule supports our conclusion. The rule bans possessing alcohol "on the premises." We find this phrase distinguishable from language forbidding alcohol "in the premises." We believe that the former provision, which Walnut Creek adopted, encompasses a broader area than the latter provision, which indicates "inclusion, location, or position within limits." Webster's Ninth New Collegiate Dictionary (1983) 607. If Walnut Creek had intended to limit its anti-alcohol policy to the nursing home only, the employee handbook would have prohibited alcohol "in the premises."

Construing "premises" as synonymous with "building," as the trial court did in the present case, however, creates a rule prohibiting alcohol possession "on the building." Such an interpretation is meaningless. The trial court's interpretation would make sense only if the rule prohibited alcohol "in the premises." Since the rule bans alcohol "on the premises," however, we find Walnut Creek's use of "premises" synonymous with "property." Therefore, the rule forbids alcohol possession "on the property." This construction of the phase is meaningful and in conformity with the purpose underlying Walnut Creek's anti-alcohol policy.

Accordingly, we sustain the appellants' assignment of error and reverse the trial court's judgment.

*Judgment reversed.*

BROGAN and WOLFF, JJ., concur.