DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a judgment issued by the Lucas County Court of Common Pleas, in an administrative appeal from a decision of the Ohio Unemployment Compensation Review Commission. For the reasons that follow, we reverse.
 {¶ 2} Appellee, Wanda Carter, was employed at the University of Toledo as a benefits specialist from August 2001 until November 2005. Her duties included training *Page 2 
new hires, processing enrollment forms, providing customer service and processing life insurance.
 {¶ 3} She was terminated on November 14, 2005. Thereafter, she filed a claim for unemployment compensation benefits with the Ohio Department of Job and Family Services ("ODJFS). On December 5, 2005, her claim was allowed based on a finding that she had been terminated without just cause pursuant to R.C. 4141.29(D)(2)(a).
 {¶ 4} Appellant, the University of Toledo, appealed the determination. On February 1, 2006, ODJFS issued a director's redetermination affirming the determination. The university again appealed and on July 18, 2006, the ODJFS transferred the appeal to the Unemployment Compensation Review Commission. A hearing was held on September 15, 2006. In a September 2006 decision, a hearing officer reversed the director's redetermination allowing appellee's claim for benefits finding that she was terminated with just cause.
 {¶ 5} On appeal, the Lucas County Court of Common Pleas reversed the commission's decision. Appellant, the University of Toledo, now appeals setting forth the following assignments of error:
 {¶ 6} "I. The trial court, in its opinion and judgment entry dated July 2, 2007, incorrectly vacated the decision of the unemployment compensation review commission, which was mailed September 26, 2006.
 {¶ 7} "II. The trial court incorrectly reversed the unemployment compensation review commission's November 2, 2006 decision disallowing request for review. *Page 3 
 {¶ 8} "III. The trial court incorrectly vacated the order of repayment issued by the director of the Ohio Department of Job and Family Services pursuant to the review commission's decision disallowing request for review."
 {¶ 9} Appellant's assignments of error will be addressed together. Appellant contends that the trial court erred in reversing the decision of the Unemployment Compensation Review Commission.
 {¶ 10} Pursuant to R.C. 4141.29(D)(2)(a), an employee is ineligible to receive unemployment compensation benefits if he or she was discharged for "just cause." Just cause is conduct that would lead a person of ordinary intelligence to conclude the surrounding circumstances justified the employee's discharge. Cooper v. Ohio Dept. of Job andFamily Servs. (Jan. 15, 2002), 4th Dist. No. 01 CA2783, citingDurgan v. Ohio Bur. of Emp. Serv. (1996), 110 Ohio App.3d 545. In determining an application for unemployment compensation, the commission considers whether an award of benefits will further the underlying purpose of unemployment compensation: to provide financial assistance to those who become unemployed through no fault of their own. TzangasPlakas v. Ohio Bur. of Emp. Servs. (1995), 73 Ohio St.3d 694, 697.
 {¶ 11} When seeking unemployment benefits, an applicant submits information to the ODJFS in support of his or her claim. Findings of fact and conclusions of law as to whether a discharged employee is entitled to unemployment compensation are initially made by the designee of the Director, ODJFS, R.C. 4141.28(B), subject to an appeal to *Page 4 
the Unemployment Compensation Review Commission (UCRC"), R.C.4141.281(C)(1), for a hearing de novo. R.C. 4141.281(C)(3).
 {¶ 12} A party who is dissatisfied with the final determination of the UCRC may appeal that decision to the appropriate court of common pleas, which shall hear the appeal on the record certified by the commission. R.C. 4141.282(H). "If the court finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence * * *" it may reverse the determination. Id. On review of purely factual questions, the common pleas court is limited to determining whether the UCRC hearing officer's determination is supported by the evidence in the record. Tzangas supra at 696. Factual findings supported by some competent, credible evidence going to the essential elements of the controversy must be affirmed. C.E. Morris v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus.
 {¶ 13} This court "may only reverse an unemployment compensation eligibility decision by [UCRC] if the decision is unlawful, unreasonable, or against the manifest weight of the evidence." (Quotations omitted.) Markovich v. Emps. Unity, Inc., 9th Dist. No. 21826, 2004-Ohio-4193, ¶ 10. When an appellate court reviews the common pleas court's review, it applies the same standard. Tzangas, supra. In such cases, this Court is "required to focus on the decision of [UCRC], rather than that of the common pleas court[.]" Markovich ¶ 10, citingBarilla v. Ohio Dept. of Job Family Servs., 9th Dist. No. 02CA008012, 2002-Ohio-5425, ¶ 6. "Every reasonable presumption must be made *Page 5 
in favor of the [decision] and the findings of facts [of the UCRC]."Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19.
 {¶ 14} In this case, the ODJFS found that appellee was terminated because she was not able to perform the required work. Tzangas set out a four-prong test for finding the employee at fault and, therefore, discharged for good cause: that (1) the employee does not perform the required work; (2) the employer made known its expectations to the employee at the time of hiring; (3) the expectations were reasonable; and (4) the requirements of the job did not change substantially since the date the employee was hired for the position. Id., paragraph four of the syllabus. The ODJFS, in allowing appellee's claim, found that there was no evidence of the first prong, that appellee did not perform the required work.
 {¶ 15} In reversing the ODJF's determination, the hearing officer relied on the following facts. Beginning in December 2004, appellee reported to the Director of Benefits, Deithra Glaze. Prior to that, she received satisfactory performance evaluations. At the hearing, Glaze testified that when she became appellee's supervisor, the only aspect of appellee's job that changed was the check cashing procedure wherein Glaze took possession of incoming checks that were not deposited the same day. Glaze testified that appellee was regularly entering data inaccurately. Some retirees from the university complained that they were sending checks in to purchase coverage and that the checks were not being deposited in a timely manner. One of appellee's duties was to process these checks. In addition, Glaze received many complaints from the payroll department *Page 6 
regarding appellee's performance and her rudeness. Glaze explained that it was important for her department and the payroll department to work well together. Glaze also received complaints from customers regarding appellee's lack of follow-up when she had promised to respond to a customer's request. As a result of these problems, appellee received an unsatisfactory rating in her yearly performance review for the period of May 2004-2005.
 {¶ 16} The rating triggered the implementation of a 90 day performance improvement plan ("PIP") for appellee pursuant to university policy. Under the plan, the employee is made aware of deficiencies in his or her job performance and the employee regularly meets with a supervisor to discuss the employee's performance and ways that performance can be improved. Appellee's particular plan listed the following deficiencies in her performance: (1) continual inadequate date entries, (2) tardy check processing, (3) inability to get along with the employees in the payroll department, (4) customer service follow-up, (5) unorganized filing and, (6) lack of a working knowledge of insurance issues.
 {¶ 17} Glaze testified that during the 90 day period, appellee's performance did not improve. Often times she came unprepared to PIP meetings with Glaze. Glaze testified that "* * * at the end of the ninety days * * * the issue wasn't whether or not she could do the work. The issue was she had decided not to and not to provide the information [needed] to further assess [her]." *Page 7 
 {¶ 18} Matt Dills, Director of Compensation and Employment Services for appellant, testified that he terminated appellee on the recommendation of Glaze and the end result of her PIP.
 {¶ 19} Appellee testified that from the time she was hired until she was terminated, her job duties "may have altered a little." She noted that the work load remained the same. She testified that in the beginning of the PIP period, Glaze met with her weekly. As time went on, the meetings were more sporadic due to Glaze's busy schedule. When she did meet with Glaze, appellee testified that Glaze led her to believe that her performance was improving. Appellee disagreed that she came to the meetings unprepared claiming that Glaze often asked her for things appellee could not provide. Appellee denied that she was neglecting the check deposit procedures. She noted that the university is a large institution and that checks sometimes "float around." Appellee testified that the entire benefits department had difficulty dealing with the payroll department, not just her. As for Glaze's contention that appellee lacked a working knowledge of insurance, appellee testified that Glaze was unaware of what knowledge appellee had.
 {¶ 20} The Lucas County Court of Common Pleas, in reversing the decision of the UCRC and citing Tzangas, found that there was no competent, credible evidence that appellant had made its expectations known to appellee when it hired her or that her job requirements did not change substantially after she was hired. The court noted that Glaze did not deny appellee's claim that her job duties continually changed. Thus, the court *Page 8 
found that the hearing officer's conclusion that appellee's failure to improve her job performance constituted sufficient fault to justify her discharge for good cause.
 {¶ 21} We have extensively reviewed the record and conclude that the decision of the UCRC is supported by the evidence. The record shows that under Glaze's supervision, the quality of appellee's work failed to improve despite the fact that she was made aware of the need for improvement. Appellee knew what was expected of her at the time of her hiring as she was given a job description. Her performance while under the PIP was cross-referenced with this job description. Nothing in the record suggests that her job duties were unusual or that her duties changed substantially before she was terminated. A change was made in the way that appellee handled checks. Specifically, the checks were turned over to Glaze before they were processed instead of the checks remaining in the possession of appellee. Such a change can hardly be called a "substantial" change in duties as that term in used inTzangas. Based on the forgoing, we conclude that the trial court erred in overruling the decision of the UCRC. Appellant's three assignments of error are found well-taken.
 {¶ 22} The judgment of the Lucas County Court of Common Pleas is reversed, and the cause is remanded for further proceedings. Appellee is ordered to pay the costs of this appeal pursuant to App.R.24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
 JUDGMENT REVERSED. *Page 9 
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Arlene Singer, J., Thomas J. Osowik, J., concur. *Page 1