[Cite as *Clark v. Cherryhill Management, Inc.*, 2018-Ohio-3397.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| BRITTANY N. CLARK | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 27544 |
| | : | |
| v. | : | Trial Court Case No. 2016-CV-5808 |
| | : | |
| CHERRYHILL MANAGEMENT, INC., et al. | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 24th day of August, 2018.

. . . . . . . . . .

ADAM R. WEBBER, Atty. Reg. No. 0080900, 30 Wyoming Street, Dayton, Ohio 45409
        Attorney for Plaintiff-Appellant

J. MILES GIBSON, Atty. Reg. No. 0019760, 2 Miranova Place, Suite 700, Columbus, Ohio 43215
        Attorney for Defendant-Appellee-Cherryhill Management Inc.

ROBIN A. JARVIS, Atty. Reg. No. 0069752, 1600 Carew Tower, 441 Vine Street, Cincinnati, Ohio 45202
        Attorney for Defendant-Appellee-Ohio Department of Job and Family Services

. . . . . . . . . . . . .

TUCKER, J.

**{¶ 1}** Plaintiff-appellant, Brittany N. Clark, appeals from the trial court's judgment of March 16, 2017, in which the court affirmed the underlying decision of the Ohio Unemployment Compensation Review Commission (the "Commission"). The Commission denied Clark's claim for unemployment compensation because it determined that her employment had been terminated for just cause in connection with work. Clark argues that the Commission's determination was not supported by competent, credible evidence, and that as a result, the trial court erred by affirming the Commission. We find that the record of this case has not been developed sufficiently to allow a review of the determination on its merits. Therefore, we reverse the trial court's judgment of March 16, 2017 and the Commission's determination and we remand this matter to the Commission for further proceedings.

## I. Facts and Procedural History

**{¶ 2}** Defendant-appellee, Cherryhill Management, Inc. ("CMI"), hired Clark in May 2007, and by June 2016, she had been made assistant manager at CMI's Valley Thrift Store in Kettering. *See* Tr. 167, Dec. 14, 2016.[1] In the intervening nine years, Clark had never been disciplined in connection with her attendance. *Id.* at 173.

**{¶ 3}** On June 13, 2016, Clark submitted a note from her physician indicating that she should be excused from work for the next two days (i.e., until June 15, 2016). *Id.* at 169 and 179. She submitted a second note on June 16th, indicating that she should

---

[1] Our pagination begins with the Commission's transmittal letter as Page 1. The pagination of individual documents included in the transcript of the record should be disregarded, although we cite separately to the decision released by the Commission on September 14, 2016.

further be excused until June 27th, and she provided Family and Medical Leave Act ("FMLA") documentation indicating that she would have ongoing medical concerns requiring intermittent absences of one to two days per week for the period running from April 1, 2016, until April 1, 2017. *Id.* at 169-170 and 180-181; Decision of the Ohio Unemployment Compensation Review Commission (Docket No. H-2016013026) 3-4, Sept. 14, 2016 (hereinafter Commission's Decision).[2] CMI did not request additional documentation. *See* Tr. 173.

{¶ 4} At the time, employees were scheduled to work in one-week intervals beginning on Mondays and ending on Saturdays; a new schedule would be posted in the store each Saturday for the week beginning the following Monday. *Id.* at 168. Employees were not otherwise notified about their schedules. *Id.* at 168 and 174-176. In accord with these practices, Clark was scheduled to work on Tuesday, June 28 and Wednesday, June 29, 2016. *Id.* at 170.

{¶ 5} Clark did not report for work as scheduled on either day, nor did she call to notify the store that she would be absent. *Id.* at 170-171. Effective June 30, 2016, CMI terminated Clark's employment for violation of the "Two Day No Call, No Show" policy set forth in its employee manual, under which:

> Any [e]mployee who misses two (2) scheduled work days in a row without calling in one (1) hour prior to [an] absence shall be terminated. When calling in, the employee must speak with a supervisor or store manager when calling off of work. You [sic] may NOT [emphasis sic] leave a voice mail message.

---

[2] Copies of the decision appear in the transcript of the record from page 190 to page 214.

[CMI] reserves the right to waive discipline in exceptional or emergency situations and further[ ] reserves the right to modify this policy at any time. Any modifications will be communicated to the [e]mployees in a timely manner.

*See also id.* at 30 and 167-168.

{¶ 6} Clark applied for unemployment compensation on July 1, 2016. The Office of Unemployment Compensation approved Clark's application in a determination issued on July 22, 2016, finding that she had been discharged without just cause. CMI appealed the determination, and on August 15, 2016, the Office of Unemployment Compensation issued a director's redetermination modifying but not reversing the initial determination. CMI then appealed to the Commission, which determined that Clark had been "discharged by [CMI] for just cause in connection with work" and held that she was therefore ineligible to receive benefits. *See* Commission's Decision 4.

{¶ 7} On November 14, 2016, Clark appealed to the trial court pursuant to R.C. 4141.282. The trial court affirmed the Commission, and Clark timely appealed to this court on April 14, 2017.

## II. Analysis

{¶ 8} In an appeal of a just-cause determination issued by the Ohio Unemployment Compensation Review Commission, the Commission "may [be] reverse[d] only [on the] find[ing] that the [Commission]'s [determination] was unlawful, unreasonable, or against the manifest weight of the evidence." *LaChapelle v. Ohio Dept. of Job & Family Servs.*, 184 Ohio App.3d 166, 2009-Ohio-3399, 920 N.E.2d 155, ¶ 17 (6th Dist.), citing *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 696, 653 N.E.2d 1207

(1995). Under this standard, "a reviewing court may not make factual findings or determine a witness's credibility and must affirm * * * if some competent, credible evidence in the record supports" the Commission's determination. *Williams v. Ohio Dept. of Job and Family Servs.*, 129 Ohio St.3d 332, 2011-Ohio-2897, 951 N.E.2d 1031, ¶ 20. An appellate court's standard of review "is identical to that of [a] trial court," though the appellate court's "focus [should be] on the [Commission]'s decision, rather than the trial court's." *LaChapelle* at ¶ 17, citing *Tzangas* at 696, and *Carter v. Univ. of Toledo*, 6th Dist. Lucas No. L-07-1260, 2008-Ohio-1958, ¶ 13. Appellate courts and trial courts alike may also remand cases to the Commission for new determinations. *Id.*, citing *AAA Northwest Ohio v. Ohio Dept. of Job & Family Servs.*, 6th Dist. Lucas No. L-02-1127, 2002-Ohio-7311, ¶ 18.

{¶ 9} As it relates to the instant matter, R.C. 4141.29(D)(2)(a) establishes that no person may "be paid benefits" if she "quit work without just cause or has been discharged for just cause in connection with [her] work." The meaning of "just cause" for purposes of the statute " 'is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.' " *Repacorp, Inc. v. Sloan*, 2016-Ohio-608, 60 N.E.3d 488, ¶ 8 (2d Dist.), quoting *Irvine v. Unemp. Comp. Bd. of Rev.*, 19 Ohio St.3d 15, 17, 482 N.E.2d 587 (1985). A just cause determination " 'must be consistent with the legislative purpose underlying the Unemployment Compensation Act,' " which is " 'to provide financial assistance to a [person] who ha[s] worked, [and is] able and willing to work, but [is] temporarily without employment through no fault * * * of [her] own.' " *Id.*, quoting *Tzangas* at 697. Because an employee at fault is " 'directly responsible for [her] own predicament,' " fault on the part of the employee " 'separates [her] from the Act's

intent and the Act's protections,' " and thus " 'fault is essential to the unique chemistry of a just cause determination.' " *Id.*, quoting *Tzangas* at 697-698. The Act itself "should be construed liberally in favor of the applicant." *Id.*, citing *Clark Cty. Bd. of Mental Retardation & Dev. Disabilities v. Griffin*, 2d Dist. Clark No. 2006-CA-32, 2007-Ohio-1674, ¶ 10; *see also* R.C. 4141.46 (stating that the provisions of R.C. 4141.01 through R.C. 4141.46 "shall be liberally construed").

{¶ 10} For her sole assignment of error, Clark argues that:

THE LOWER COURT ERRED IN HOLDING THAT THE UNEMPLOYMENT COMPENSATION REVIEW COMMISSION'S DECISION WAS SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE; THE DECISION OF THE UNEMPLOYMENT COMPENSATION REVIEW COMMISSION WAS UNLAWFUL, UNREASONABLE, AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 11} Clark offers three arguments for reversal of the Commission's Decision. First, she contends that because, through no fault of her own, she was unaware of her schedule for the work-week that began on Monday, June 27, 2016, "no ordinarily intelligent person could regard [her] failure to appear for work" on Tuesday, June 28 and Wednesday, June 29, 2016 "as a justifiable reason for her discharge." *See* Appellant's Br. 2-3 and 8-9. Second, she contends that her termination violated the FMLA because CMI did not "notify her of the need for further documentation [with respect to] her absence[s]" on June 28 and June 29, 2016, and third, she contends that the Commission "erred in holding that [she] was terminated for just cause [because] her absences were [attributable] to a bona fide illness." *Id.* at 9-10 and 12. CMI argues in response that

Clark's termination was justified because she "never provided any sort of documentation as to why [she] was not able to come to work on June 28th or 29th." Appellee's Br. 5.

**{¶ 12}** The Commission's Decision pivots on its findings regarding the doctor's note and FMLA documentation that Clark submitted on June 16, 2016. Concerning the former, the Commission found that the note "only indicated that [Clark] should be excused from work through June 27, 2016." Commission's Decision 4. Concerning the latter, the Commission acknowledged that the FMLA documentation "indicate[d] that [Clark would be] incapacitated from April [1], 2016 to April [1], 2017," but it found that CMI's "expectation that [Clark] would report to work on June 28 and June 29[,] 2016 or provide notification that she would be absent was not unreasonable" based on CMI's "experience" that Clark "had worked after April [1], 2016 and provided doctor's notes for [her] absences" between June 13th and June 27th.[3] *Id.* Thus, having found that Clark did not notify CMI that she would be absent on June 28th and June 29th, the Commission concluded that CMI was justified in terminating Clark pursuant to the policies set forth in CMI's employee handbook. *Id.*

**{¶ 13}** Clark, however, submitted her FMLA documentation on June 16, 2016, <u>at the same time</u> that she submitted a doctor's note excusing her from work until June 27, 2016.[4] Tr. 46 and 169. The Commission appears to have been misled by the backdated FMLA documentation, remarking that Clark "worked after April [1], 2016," even

---

[3] When it examined the FMLA documentation, the Commission appears to have read the final letter in the word "April" as the first digit in the number "11." *See* Tr. 44-45.

[4] Clark's physician signed the FMLA documentation on June 16, 2016 and backdated it to April 1, 2016, which is the date listed for the onset of Clark's medical condition. Tr. 44-45. Although the record does not include a copy of the June 16th doctor's note, the parties seem to agree on what the note said. *Id.* at 169-170 and 179-180.

though the documentation "indicate[d] that [she] was incapacitated from April [1], 2016[,] to April [1], 2017." Commission's Decision 4. Given that Clark submitted the documentation on June 16, 2016, the Commission's remark suggests that it misapprehended the record. That is, on June 16th, CMI could not yet have had any meaningful "experience" with Clark "work[ing] after April [1st] and providing doctor's notes for [her] absences between June 13[th] and June 27[th]," inasmuch as the record includes no evidence that Clark took any medical leave between April 1, 2016, and June 13, 2016.

{¶ 14} The Commission, furthermore, did not discuss whether CMI's expectation was reasonable given that: (1) Clark had never once been disciplined in connection with her attendance during the nine years she was employed by CMI; and (2) Clark's schedule for the work-week beginning Monday, June 27th would have been available to her no earlier than Saturday, June 25th, during the period expressly covered by the doctor's note she submitted on June 16th. Despite the uncontroverted testimony establishing the foregoing facts, they were not included among the Commission's factual findings nor addressed in its legal analysis. *See, e.g., Janovsky v. Ohio Bur. of Emp. Servs.*, 108 Ohio App.3d 690, 694, 671 N.E.2d 611 (2d Dist.1996) (referring to Ohio case law holding that just cause for termination under the Unemployment Compensation Act requires a "demonstrat[ion] [of] an unreasonable disregard for an employer's best interests," rather than a technical violation of a company rule); *Adams v. Harding Mach. Co., Inc.*, 56 Ohio App.3d 150, 155, 565 N.E.2d 858 (3d Dist.1989) (referring to Ohio case law holding "that the violation of a work rule which may well justify the discharge of an employee under [an] employment contract does not necessarily amount to misconduct sufficient to deny unemployment compensation benefits under the [Unemployment Compensation Act]");

*Kiikka v. Ohio Bur. of Emp. Servs.*, 21 Ohio App.3d 168, 169, 486 N.E.2d 1233 (8th Dist.1985).

{¶ 15} Equally as problematic, the Commission did not discuss the application of the FMLA.[5]   An "employee is not discharged for just cause where [she] is discharged for conduct [that] is protected by the United States Constitution or federal labor law."   *Giles v. Willis*, 2 Ohio App.3d 335, 337, 442 N.E.2d 101 (8th Dist.1981).   To "invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting * * * leave."   *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir.1998), citing *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 762 (5th Cir.1995).   When "the need for leave is foreseeable," the employee "must provide the employer at least 30 days advance notice before FMLA leave is to begin."   29 C.F.R. 825.302(a).   When, on the other hand, "the need for FMLA leave is unforeseeable," the employee "must provide notice to [her] employer <u>as soon as practicable</u> under the facts and circumstances of the particular case," including an indication of "the <u>anticipated</u> duration of the absence, if known."   (Emphasis added.)   29 C.F.R. 825.303(a)-(b); *see also Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir.2005).   Examples of "foreseeable" reasons for taking FMLA leave include "an expected birth, placement for adoption or foster care, planned medical treatment for a serious health condition of the employee or of a family member, or the planned medical treatment for a serious injury or illness of a covered servicemember."   29 C.F.R. 825.302(a).

{¶ 16} By "focusing on whether [Clark] provided enough documentation for

---

[5] Clark filed a notice on December 29, 2017, directing our attention to a decision entered in her federal action against Cherryhill.   In light of the procedural basis of the federal decision, we have not considered it for purposes of resolving the instant matter.

continued leave" after June 27, 2016, the Commission missed the "relevant question, [which] is whether [she] provided [CMI] with notice that she needed FMLA leave, not whether she provided notice that she needed <u>a certain amount of FMLA leave</u>." (Emphasis added.)  *See Wallace v. FedEx Corp.*, 764 F.3d 571, 586 (6th Cir.2014), citing *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 725 (6th Cir.2003).  Regardless of the dates listed in the doctor's note that Clark submitted on June 16, 2016, her simultaneous submission of FMLA documentation put CMI on notice that she required medical leave and placed her under the protection of the act.

{¶ 17} According to 29 C.F.R. 825.311(c), because "an employee [may need] to take more leave than originally anticipated," the "employer may require that the employee provide the employer [with] reasonable notice (i.e., within two business days) of the changed circumstances <u>where foreseeable</u>."  (Emphasis added.)  *See also* 29 C.F.R. 825.303(a).  Alternatively, the "employer may also obtain information * * * through requested status reports."  *Id.*  CMI's "Two Day No Call, No Show" policy could, theoretically, be interpreted as an implementation of this regulation, although in the description of its "Attendance Program," CMI states that "[t]his policy does not apply to employees who are on approved leave such as [leave taken pursuant to the] Family [and] Medical Leave [Act]."[6]  Tr. 29-30.  The "No Show" policy and the "Attendance Program" appear under separate headings, though the former could be characterized as a subset

---

[6] Under the heading "Emergency [a]nd Family Medical Leave," CMI's employee handbook essentially paraphrases 29 C.F.R. 825.302(a) and 825.303(a)-(b), requiring that employees "give * * * [30] days notice prior [to taking] leave" for "foreseeable" reasons, and that employees "notify [CMI] as soon as possible" when taking leave for reasons that are "not foreseeable."  Tr. 31.  This section of the handbook makes no reference to the "Attendance Program" or the "Two Day No Call, No Show" policy.  *Id.* at 31-32.

or interrelated component of the latter. *See id.*

**{¶ 18}** Notwithstanding that the Commission found that Clark violated the "No Show" policy, it did not consider whether the enforcement of the policy, under the circumstances, comported with the FMLA. For example, according to 29 C.F.R. 302(d), an "employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances"; in this case, the schedule calling for Clark to report to work on Tuesday, June 28, 2016, and Wednesday, June 29, 2016, was posted on Saturday, June 25, 2016—at which time Clark was still on approved medical leave. Given that Clark thus had no obligation to report to work on June 25th and was not otherwise informed of her upcoming schedule, an analysis of whether her termination violated the FMLA was warranted. In addition, 29 C.F.R. 825.300(c)(1) requires that "[e]mployers * * * provide written notice detailing the specific expectations and obligations of * * * employees and explaining any consequences of * * * failure[s] to meet these obligations." The record provides no indication that CMI complied with this regulation.

**{¶ 19}** Moreover, the Commission implies that CMI knew or had been informed that Clark would be absent on June 28 and June 29, 2016—it remarked that even though "the reason for [Clark's] absence[s] may have been related to the FMLA leave, [Clark] admits that she did not personally notify [CMI] that she would be absent after June 27, 2016." (Emphasis added.) Commission's Decision 4. Clark did not necessarily have to notify CMI personally about her absences to invoke the protections of the FMLA, and the record should be developed to reflect exactly what information was provided to CMI, when it was provided, and by whom. 29 C.F.R. 825.303(a) (stating that "[n]otice may be

given by [an] employee's spokesperson"); *Spencer v. Marygrove College*, 13 Wage & Hour Cas.2d (BNA) 1811, 2008 WL 4056319, *7 (E.D.Mich. 2008); *Meadows v. Texar Fed. Credit Union*, 13 Wage & Hour Cas.2d (BNA) 210, 2007 WL 192942, *29 (E.D.Tex. 2007).

### III. Conclusion

{¶ 20} Appellant's assignment of error is sustained.  We find that the record of this matter must be further developed to permit a review of the Commission's Decision on the merits.   On remand, the Commission should attempt to obtain a copy of the doctor's note that Clark submitted on June 16, 2016, or indicate for the record that the parties were unable to furnish a copy of the note; evaluate Clark's termination under the standard for just cause determinations articulated in decisions such as *Janovsky,* 108 Ohio App.3d 690, 694, 671 N.E.2d 611 (2d Dist.1996), *Adams*, 56 Ohio App.3d 150, 155, 565 N.E.2d 858 (3d Dist.1989), and *Kiikka*, 21 Ohio App.3d 168, 169, 486 N.E.2d 1233 (8th Dist.1985); and further evaluate Clark's termination under the FMLA, including but not limited to the provisions of 29 C.F.R. 825.300, 825.302, 825.303 and 825.311.

{¶ 21} For all of the foregoing reasons, we reverse the trial court's judgment of March 16, 2017 and the Commission's determination.   The matter is remanded to the Commission for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies mailed to:

Adam R. Webber
J. Miles Gibson
Robin A. Jarvis
Unemployment Compensation Review Commission
Hon. Steven K. Dankof