[Cite as *Brunaugh v. Damschroder*, 2024-Ohio-1905.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| THOMAS BRUNAUGH, | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | |
| MATT DAMSCHRODER, DIRECTOR | : | Case No. 2023 CA 00077 |
| OF JOB AND FAMILY SERVICES, et al., | : | |
| | : | |
| Defendant - Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Licking County
                             Court of Common Pleas, Case No.
                             22 CV 01178

JUDGMENT:                    Affirmed

DATE OF JUDGMENT:            May 17, 2024

APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

DAVE YOST                              JAMES R. COOPER
Ohio Attorney General                  Morrow, Gordon & Boyd, LTD.
                                       33 West Main Street
By: DAVID E. LEFTON                    P.O. Box 4190
Principal Assistant Attorney General
Health and Human Services Section
Unemployment Compensation Unit
30 East Broad Street, 26th Floor
Columbus, Ohio 43215

*Baldwin, J.*

**{¶1}** Appellant Thomas E. Brunaugh appeals the trial court's decision affirming the determination of the Ohio Unemployment Compensation Review Commission, which affirmed the Ohio Department of Job & Family Services' denial of the appellant's application for unemployment benefits. Appellee is Director, Ohio Department of Job and Family Services.

### STATEMENT OF THE FACTS AND THE CASE

**{¶2}** The appellant was employed by the Anomatic Corporation ("Anomatic") between December 14, 2014 and June 14, 2022, and worked as a multi-craft technician at the time of his separation from employment. Anomatic had a written discipline policy which was provided to all of its employees. The policy follows a general four-step progression for violations, from a verbal warning or counseling, to a written warning, to a final written warning or suspension, to discharge. The policy also provides that Anomatic may skip steps. Specifically, Anomatic's progressive discipline policy states that "[t]he Company reserves the right to combine or skip steps depending on the facts of each situation and the nature of the offense."

**{¶3}** On June 10, 2022, the appellant was called to the production line to address an impediment in the line. The African-American co-worker who had called for the appellant's assistance signaled to the appellant as he approached. The appellant reportedly responded, "I'm coming, you cotton-picker." The co-worker was offended by the appellant's comment and reported the incident to company management.

**{¶4}** Anomatic's Human Resources Department undertook an investigation, and questioned the appellant. The record shows that the appellant admitted to making the

statement, but indicated that he meant no offense and that it was simply an expression that he used. The appellant later stated that he used the term "cotton picker" in relation to the piece of equipment that had malfunctioned, saying "Okay, I got the cotton picker."

{¶5} Anomatic determined that the appellant's statement was serious enough to warrant discharge rather than some lesser discipline, and the appellant was subsequently discharged from employment.

{¶6} The appellant filed an application unemployment benefits. The appellee Ohio Department of Job and Family Services issued a determination disallowing the appellant's application based upon a finding that he was discharged from employment for just cause in connection with work. The appellant filed an appeal from the determination, and the Director of Ohio Department of Job and Family Services transferred jurisdiction to the Ohio Unemployment Compensation Review Commission ("Review Commission.")

{¶7} On September 13, 2022, a Hearing Officer for the Review Commission conducted an evidentiary hearing, the transcript of which is contained in the record. The Hearing Officer questioned the appellant about the incident as follows:

Q:     Okay. Um, well tell me about the incident that, that, um you used the term "cotton picker" and, and how it led to his from your perspective.

A:     I was, ah, as a maintenance employee I was called down to a piece of equipment and the gentleman told me that, ah, they had a basket lid stuck. And I said, "Okay, I got the cotton picker." And I proceeded to do my work and got it completed an he was gone and I found out later on that he was offended.

Q:     Okay. Um, do you have any idea as to why he would be offended?

A:      He, I guess he took offense to the work "cotton picker."

Q:      Okay. Any reason that you would think that he would?

A:      No. I mean I spoke with him many times before and I, I had no idea.

Q:      Okay. Um, individual an African-American?

A:      Yes, sir, he was.

Q:      Okay. In your, um, fact-finding that you provided to the Department, I don't know whether your counsel got a copy of the Director's file or not but, um, in it it says and I'll read what, what you provided, um question from the Department, "Describe the final event that led to your discharge, including specific dates and details." Your response, "I was called down to the degreasing line as one of the baskets was stuck. The gentleman that was waiting for me was saying, 'Right here. This one.' And I said, 'I'm coming. I'm coming. You cotton picker.'" That's slightly different that what you have just described to me. Is it not?

A:      I, I do not recall that at all.

Q:      Okay. Um, I don't believe I have additional questions, Mr. Brunaugh. Mr. Cooper, questions for Mr. Brunaugh?

The appellant's counsel questioned him regarding the phrases "the cotton picking thing" and "cotton-picker" in an effort to mitigate the damage from the Hearing Officer questions. The Hearing Officer was, however, in the best position to ascertain the appellant's veracity on this issue.

{¶8}    On September 14, 2022, the Hearing Officer issued a decision in which he found that the appellant's use of the term "cotton-picker", or even "cottoning picking," in

the vicinity of African-American co-workers was "highly offensive in today's world," that it seriously offended his co-worker, and that Anomatic was:

> . . . within their rights to consider [the appellant's] statement so offensive as to merit discharge rather than some lesser discipline. [The appellant's] statement was unreasonable and unnecessary. The policy of Anomatic to discharge an employee for using such a statement is a reasonable policy. [The appellant's] statement was not in the best interest of his employer. This constitutes fault that will serve to suspend [the appellant's] unemployment compensation benefits. [The appellant] was discharged by Anomatic for just cause in connection with work.

The Hearing Officer thus found that the appellant was terminated for just cause, and affirmed appellee Ohio Department of Job and Family Services' decision to disallow the appellant's claim for unemployment benefits.

{¶9} The appellant filed a request for further review and, on October 5, 2022, in a Final Decision, the Review Commission denied the request.

{¶10} The appellant thereafter appealed to the Licking County Court of Common Pleas. On October 2, 2023, the trial court affirmed the decision of the Review Commission, and found that the appellant was not entitled to unemployment compensation benefits.

{¶11} The appellant filed a timely appeal in which he sets forth the following sole assignment of error:

{¶12} "I. THE COURT OF COMMON PLEAS OF LICKING COUNTY, OHIO, ERRED IN ITS JUDGMENT AND ENTRY WHICH AFFIRMED THE DECISION OF THE

UNEMPLOYMENT COMPENSATION REVIEW COMMISSION OF THE STATE OF OHIO WHICH HELD THAT THE APPELLANT WAS DISCHARGED BY HIS EMPLOYER FOR JUST CAUSE IN CONNECTION WITH WORK."

## STANDARD OF REVIEW

{¶13} The standard of review in unemployment-compensation appeals is well-established. A reviewing court may reverse the board's determination only if it is unlawful, unreasonable, or against the manifest weight of the evidence. *Geretz v. Ohio Dept. of Job & Family Servs.,* 114 Ohio St.3d 89, 868 N.E.2d 669, 2007–Ohio–2941, ¶ 10, citing *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.,* 73 Ohio St.3d 694, 697, 653 N.E.2d 1207, 1995–Ohio–206. "[W]hile appellate courts are not permitted to make factual findings or to determine the credibility of witnesses, they do have the duty to determine whether the board's decision is supported by the evidence in the record." *Tzangas* at 696, 653 N.E.2d 1207. "This duty is shared by all reviewing courts, from the first level of review in the common pleas court, through the final appeal in this court." *Id.* See, also R.C. 4141.282(H).

## ANALYSIS

{¶14} The issue of when unemployment benefits may be properly denied was recently discussed by this Court in the case of *Evans v. Director, Ohio Department of Job and Family Services,* 5th Dist. Delaware No. 23 CAE 04 0023, 2023-Ohio-4299, 230 N.E.3d 629, *appeal not allowed by* 173 Ohio St.3d 1444, Apr. 2, 2024, 230 N.E.3d 629. The Court, citing *Tzangas, supra,* addressed the standard of review for trial court decisions that affirm Review Commission determinations, stating:

. . . In *Irvine v. Unemp. Comp. Bd. of Review,* 19 Ohio St.3d 15, 17–18, 482 N.E.2d 587, 590 (1985), the Ohio Supreme Court held that reviewing courts may reverse "just cause" determinations "if they are unlawful, unreasonable, or against the manifest weight of the evidence." The court noted that while appellate courts are not permitted to make factual findings or to determine the credibility of witnesses, *641 they do have the duty to determine whether the board's decision is supported by the evidence in the record. Id. at 18, 482 N.E.2d at 590; *Tzangas, Plakas & Mannos*, 73 Ohio St.3d 694, 696, 653 N.E.2d 1207. This duty is shared by all reviewing courts, from the first level of review in the common pleas court, through the final appeal in the Ohio Supreme Court. Id.; *See also, Struthers v. Morell*, 164 Ohio App.3d 709, 2005-Ohio-6594, 843 N.E.2d 1231 (7th Dist.), ¶14; *Marlatt v. Ohio Dept. of Job and Family Services*, 5th Dist. Guernsey No. 22 CA 000022, 2023-Ohio-630, 2023 WL 2326704, ¶13. The Court further cautioned,

> To apply the same standard at each appellate level does not result in a de novo review standard. As this court stated in *Irvine*, "[t]he fact that reasonable minds might reach different conclusions is not a basis for the reversal of the board's decision." *Irvine* at 18, 19 OBR at 15, 482 N.E.2d at 590. The board's role as factfinder is intact; a reviewing court may reverse the board's determination only if it is unlawful, unreasonable, or against the manifest weight of the evidence.

*Id.* at ¶42. The *Evans* Court defined manifest weight, stating further:

Recently, the Ohio Supreme Court again addressed the appropriate standard for reviewing courts to employ when conducting a manifest weight of the evidence review. In *State v. Jordan*, —— Ohio St.3d ——, 2023-Ohio-3800, —— N.E.3d ——, the Court reiterated that the standard set forth in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), is appropriate,

> [W]hen an appellate court reviews whether a judgment is against the manifest weight of the evidence, the court looks at the entire record and " 'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [decision] must be reversed, and a new [hearing] ordered.' " [*Thompkins*] at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983). Sitting as the "thirteenth juror," the *642 court of appeals considers whether the evidence should be believed and may overturn a [decision] if it disagrees with the trier of fact's conclusion. See id.

*Jordan*, ¶17. "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Eastley*, at ¶ 19.

However, this standard of review must be modified slightly when reviewing an appeal from a decision rendered by the UCRC because the Ohio Supreme Court has repeatedly told us that appellate courts are not permitted to determine the credibility of witnesses in those cases. *Simon v. Lake Geauga Printing*, 69 Ohio St.2d 41, 44, 430 N.E.2d 468 (1982); *Irvine v. Unemp. Comp. Bd. Of Review*, 19 Ohio St.3d 15, 17-18, 482 N.E.2d 587 (1985); *Tzangas, Plakas & Mannos v. Ohio Bur. Of Emp. Serv.*, 73 Ohio St.3d 694, 696, 653 N.E.2d 1207 (1995); *Williams v. Ohio Dept. of Job and Family Servs.*, 129 Ohio St.3d 332, 2011-Ohio-2897, 951 N.E.2d 1031, ¶20.

We further note that we are required to focus on the decision of the commission, rather than that of the trial court. *Irvine v. State Unemp. Comp. Bd. of Rev.,* 19 Ohio St.3d 15, 17, 482 N.E.2d 587 (1985), ¶18; *Huth v. Director, Ohio Dept. of Job and Family Services*, 5th Dist. Tuscarawas, 2014-Ohio-5408, 26 N.E.3d 250; *Perkins v. Ohio Dep't of Job & Family Servs.*, 10th Dist. Franklin No. 18AP-900, 2019-Ohio-2538, 2019 WL 2605225, ¶ 11, *citing Carter v. Univ. of Toledo*, 6th Dist. No. L-07-1260, 2008-Ohio-1958, 2008 WL 1837254, ¶ 12; *Meinerding v. Coldwater Exempted Village School Dist. Bd. of Education*, 3rd Dist., 2019-Ohio-3611, 143 N.E.3d 1147, ¶ 18.

*Id.* at ¶44-46.

{¶15} Finally, the *Evans* Court discussed application of the standard of review to cases involving unemployment compensation:

Unemployment compensation provides temporary income to workers who lose their jobs through no fault of their own. *Irvine v. Unemployment Comp. Bd. Of Rev.,* 19 Ohio St.3d 15, 17, 482 N.E.2d 587. For example, discharge due to layoff, plant closure or work slowdown. See, *Irvine* at 17, 482 N.E.2d 587, *quoting Leach v. Republic Steel Corp.*, 176 Ohio St. 221, 223, 27 O.O.2d 122, 199 N.E.2d 3 (1964); *Williams v. Ohio Dept. of Job & Family Servs.,* 129 Ohio St.3d 332, 2011-Ohio-2897, 951 N.E.2d 1031, ¶ 22. However, not all workers are eligible for unemployment benefits. For example, workers who were fired with just cause cannot receive benefits. R.C. 4141.29(D)(2)(a); *Marlett v. Ohio Department of Jobs and Family Services*, 5th Dist. Guernsey No. 22CA00022, 2023-Ohio-630, 2023 WL 2326704, ¶14.

For purposes of unemployment compensation, the focus is on whether the employee is unemployed through no fault of their own. R.C. 4141.29(D)(2)(a) provides:

(D) * * * [N]o individual may * * * be paid benefits * * *:

(2) For the duration of the individual's unemployment if the director finds that:

(a) The individual quit his work without *just cause* or has been discharged for *just cause* in connection with the individual's work,

 * * *.

Emphasis added. "Thus, fault is essential to the unique chemistry of a just cause termination." *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.,*

73 Ohio St.3d at 697–698, 653 N.E.2d 1207; *Williams v. Ohio Dept. of Job & Family Servs.*, 129 Ohio St.3d 332, 2011-Ohio-2897, 951 N.E.2d 1031, ¶23. Fault, however, is not limited to willful or heedless disregard of a duty or a *643 violation of an employer's instructions. *Williams*, 129 Ohio St.3d 332, 951 N.E.2d 1031 at ¶ 24, *citing Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d at 698, 653 N.E.2d 1207. Fault may arise from willful or heedless disregard of a duty, a violation of an employer's instructions, or unsuitability for a position. *Williams* at ¶ 24; *Moore v. Ohio Unemp. Comp. Rev. Comm.*, 10th Dist. Franklin No. 11AP-756, 2012-Ohio-1424, 2012 WL 1079160, ¶ 21. The critical issue is whether the employee's actions demonstrate an unreasonable disregard for an employer's best interest. *Janovsky v. Ohio Bureau of Employment Services*, 108 Ohio App.3d 690, 694, 671 N.E.2d 611 (2nd Dist. 1996); *Peterson v. Director*, 4th Dist. Ross No. 03CA2738, 2004-Ohio-2030, 2004 WL 869373, ¶38; *Kiikka v. Administrator, Bureau of Employment Services*, 21 Ohio App.3d 168, 169, 486 N.E.2d 1233 (8th Dist. 1985); *Gregg v. SBC Ameritech*, 10th Dist. No. 03AP-429, 2004-Ohio-1061, 2004 WL 422817, ¶39; *Quartz Scientific, Inc. v. Ohio Bur. Of Unemp. Comp.*, 11th Dist. Lake No. 2012-L-0090, 2013-Ohio-1100, 2013 WL 1195622, ¶5.

This does not mean that an employee's behavior must consist of misconduct, but it does require some degree of fault on the part of the employee. *Quartz,* ¶15, *citing Sellers v. Bd. of Rev.*, 1 Ohio App.3d 161, 164, 440 N.E.2d 550 (10th Dist. 1981). In *Cassaro v. Ohio Dept. of Job &*

*Family Servs.*, 3rd Dist. Crawford No. 3-16-08, 2016-Ohio-7643, 2016 WL 6635692, the court agreed noting,

> Likewise, "courts have repeatedly held that a discharge is considered for just cause when an employee's conduct demonstrates some degree of fault, such as behavior that displays an unreasonable disregard for his employer's best interests." *Markovich v. Employers Unity, Inc.*, 9th Dist. Summit No. 21826, 2004-Ohio-4193 [2004 WL 1778815], ¶ 8, *citing Tzangas, Plakas & Mannos,* 73 Ohio St.3d 694 [653 N.E.2d 1207], at paragraph two of the syllabus, *Kiikka* at paragraph two of the syllabus, and *Sellers v. Bd. of Rev.*, 1 Ohio App.3d 161 [440 N.E.2d 550] (10th Dist. 1981), paragraph two of the syllabus.

Id. at ¶16.

*Evans* at ¶¶47-49.

**{¶16}** We must apply this standard to determine whether Anomatic terminated the appellant's employment with just cause within the unemployment context. If there was not justifiable case, the appellant has the right to unemployment compensation benefits. If there was justifiable case, he does not.

**{¶17}** In making this determination we review the record and determine whether denial of the appellant's unemployment benefits was unlawful, unreasonable, or against the manifest weight of the evidence. Further, in engaging in the manifest weight analysis, we look to the entire record and all reasonable inferences to determine if the Review Commission Hearing Officer lost his way, and therefore created such a manifest

miscarriage of justice that the decision to affirm the denial of unemployment benefits must be reversed.

**{¶18}** Anomatic had a disciplinary policy that provided for progressive discipline. However, the policy also provided that Anomatic "reserves the right to combine or skip steps depending on the facts of each situation and the nature of the offense." While the offense at issue was the appellant's first offense, Anomatic found it to be sufficiently pejorative to warrant skipping the progressive disciplinary steps altogether and terminate his employment, as set forth in the company's discipline policy. Whether this Court would have reached a different conclusion is not a consideration. Courts have repeatedly held that an employee's discharge is considered "for just cause" when his or her conduct demonstrates some degree of fault and displays an unreasonable disregard for his employer's best interests. The appellant was at fault when he used the racially offensive term at issue in the workplace – a workplace that includes African-Americans. It was not unreasonable, unlawful, or a manifest miscarriage of justice for the appellee Review Commission's Hearing Officer to find that the appellant's conduct was not in his employer's best interest and, as a result, that he was terminated for just cause.

**{¶19}** Based upon our independent review of the entire record, and weighing the evidence and all reasonable inferences as "a thirteenth juror," we cannot say that the Review Commission Hearing Officer acted unlawfully, unreasonably, or lost his way such that a manifest miscarriage of justice was created in this case. Accordingly, we find the appellant's assignment of error to be without merit.

**CONCLUSION**

{¶20} Based upon the foregoing, the appellant's sole assignment of error is overruled, and the decision of the Licking County Court of Common Pleas is hereby affirmed.

By: Baldwin, J.

Gwin, P.J. and

Wise, John, J. concur.